McCALEB, Justice.
 

 The town of Ville Platte, following a special meeting of the Board of Aldermen on October 28th 1947, at which it was decided to move a gas pipe line in order to facilitate the widening of a highway by the Louisiana State Highway Department, advertised for bids for the performance of this public work. The advertisement provided that “Notice is hereby given that bids will be received Friday, November 14, 1947 * * * for a contract to remove the Gas Pipe Line extending from meter house on Chataignier Street to a distance in a southern direction of approximately 22,000 feet” along the proposed highway ‘‘said contract to cover all labor, materials, crossings, connections and every requirement of the State Highway Department, and to meet all specifications on file in the City Hall of Ville Platte * * * ”.
 

 Plaintiff, a contractor residing in Evangeline Parish, and two others were interested bidders on the project. On the date upon which bids were received, plaintiff submitted the low bid of $6,900 for the entire work “as per your public notice” which was accepted by the Board of Aldermen. The next lowest bid was $11,880 and the other bid was several hundred dollars in excess of that.
 

 
 *424
 
 Prior to the preparation and submission of his bid, plaintiff visited the Mayor and Town Clerk for the purpose of examining the specifications for the work, which had been advertised to be on file in the City Hall, and was informed that none had been prepared. Plowever, he was told at the City I-Iall that Messrs. Sompton Soileau and Orise Fontenot, who were in charge of the gas system operated by the town, could supply all necessary -information. Conformably, plaintiff and his foreman contacted Soileau and Fontenot, who told them that there were 12 or 13 gas connections, and not over 14, to be moved and they went to the site of the work with plaintiff to show him the location of these connections, placing pegs where they were situated. Plaintiff’s bid for the work was based upon these representations.
 
 [1]
 

 The execution of the work did not begin until early in April of 1948 or more than four months after plaintiff was awarded the contract. On April 6th, during the progress of the job, plaintiff ascertained that there were more than 12 or 13 gas connections requiring removal. Upon making this discovery, he immediately stopped work and called upon the Mayor and Board of Aldermen for an increase in his bid. He also contacted Fontenot and Soileau and was informed by them that the additional connections that had been found were new — that is, gas connections which had been made since the acceptance of plaintiff’s bid. With these facts at hand and upon plaintiff’s representation that $130 for the removal of each additional connection would be a fair price, the Board of Aldermen resolved that “Whereas, additional connections have been made on the gas line * * * ” since the letting of the contract to plaintiff, which increased the cost of moving the line, “Therefore, * * * Oscar Sylvester, Contractor, shall be paid $130 for each unit or connection made since the letting of the contract”.
 

 Upon being thus' assured of extra compensation for the removal of additional connections (which were then believed to have been made during the interval between the letting and execution of the contract), plaintiff performed the job specified in the advertisement for bid-s. However, this necessitated the removal of a total of 41 connections of which only three had been made after the letting of the contract. Hence, there were actually 38 connections which required removal at the time plaintiff bid on the job instead of 12 or 13, as depicted by Soileau and Fontenot.
 

 Later, the job was accepted by the town and a voucher was drawn in plaintiff’s favor for the original contract price of $6,900. The Board of Aldermen also issued a warrant for $390 in payment for removal of the three additional connections, which
 
 *426
 
 bad been made subsequent to the contract, recompense for which was specifically covered by the Board’s resolution of April 6th 1948. Plaintiff cashed the voucher issued in payment of .the original contract bid price of $6,900 but refused the $390 voucher on the ground that, under the resolution of the Board of April 6th 1948, he was entitled to payment for the removal of 29 additional connections at $130 each, being the difference between the 41 connections removed and the 12 connections allegedly contemplated by his bid. Upon the town’s refusal to accede to this demand, this suit followed.
 

 Plaintiff’s action, which is for the recovery of $3,770 or $130 each for 29 additional connections, is founded on the theory that, due to misrepresentation on the part of the employees of the town, he made a bid based upon a belief that there were only 12 gas connection pipes to be moved; that, upon discovering that there were additional connections, he stopped the job and insisted upon extra compensation for any work not contemplated by his bid; that, thereafter, a new contract was made whereby he was to receive $130 for each additional gas connection in excess of 12 requiring removal and that, accordingly, he i-s entitled to recover the sum demanded under that agreement. Alternatively, he asserts that, should the resolution of April 6th be considered insufficient to constitute a contract and inadequate to justify his reliance thereon in the removal of additional connections, then he should nevertheless have judgment for the amount •sought on a quantum meruit basis.
 

 The defense of the town is primarily that there is no justification in law for plaintiff’s position that he was misled or acted under an error of fact in making his original bid which was accepted and resulted in a binding contract between the parties; that, furthermore, plaintiff’s reliance for recovery on the resolution of the Board of Aldermen of April 6th 1948 is without merit as that resolution specifically limits liability for additional compensation to removals of connections which were installed subsequent to the letting of the contract (of which there are three) for which proper voucher in the sum of $390 has been tendered to plaintiff.
 

 After a hearing on these issues, there was judgment in favor of plaintiff for the sum of $2990, based on the removal of 23 additional connections at $130 each.
 
 [2]
 
 The district judge was of the opinion that plaintiff had been misled by the employees of the town into submitting a bid calculated on the removal of 12 or 13 (and, assuredly, not more than 18) connections; that, there
 
 *428
 
 fore, the contract was voidable at plaintiff’s option and that, although the resolution of the Board of Aldermen could not be viewed' as a binding contract to pay for all additional connections, plaintiff was entitled to recompense on a quantum meruit for the removal of 23 at $130 each, which represented a fair value of the work. The town has appealed from the decision and plaintiff has answered, praying for an increase in the judgment to .the amount demanded in his petition.
 

 Imprimis, it is appropriate to say that, although the testimony given by the witnesses for the opposing litigants is highly conflicting, we are in full accord with the findings of fact of the district judge and the foregoing statement of the case reflects, for the most part, those facts as set forth in his written opinion. Therefore, - our discussion of the case is premised on a belief that, had it not been for the representations of Soileau and Fontenot that there were only 12 or 13 gas connections to be moved, plaintiff’s bid for the contract would have greatly exceeded $6,900.
 

 The question is whether plaintiff was entitled to rely upon the representations of the town’s employees. If so, the contract was subject to annulment at his option, Article 1881, Civil Code, because of the lack of consent due to misrepresentation and error. Articles 1819, 1826 and 1832 of the Civil Code.
 

 Counsel for defendant contends that plaintiff had no right to rely on any representation of the city employees as they were not authorized to bind the town and that, since the bid was made and accepted in accordance with the advertisement which required the removal of all connections, parol evidence was inadmissible to vary the obligation set forth in the agreement.
 

 The point that parol evidence is not admissible is clearly without merit for the reason that plaintiff is pleading error and misrepresentation. Baker v. Baker, 209 La. 1041, 26 So.2d 132, and authorities, there cited.
 

 Nor do we think that there is any substance in counsel’s contention that plaintiff could not depend upon the representations of Soileau and Fontenot. To begin with, the town was derelict in failing to provide specifications for the bidding definitely fixing the extent and character of the work to be done, as represented by it in its advertisement for bids which declared that the specifications were on file at the City Hall. It is a settled principle of law that municipal corporations, in requiring competition in bidding for public improvement contracts, should adopt -such plans and specifications fixing the extent. and character of the work to be done so that all bidders be given an opportunity to bid on the same thing. 63 C.J.S., Municipal-Corporations, § 1149(b).
 

 In Section 35 of 43 American Jurisprudence, under the title “Public Works and' Contracts”, is found the following: “When public contracts for the performance of
 
 *430
 
 work, the construction of buildings and other improvements, or the supplying of materials are required to be let only upon ■competitive bidding,
 
 [3]
 
 it is essential, and usually expressly required by the statute ■or ordinance governing the letting of such •contracts, that plans, specifications, and estimates be prepared in advance and filed ■or given out to all persons interested in the bidding, sufficiently definite and explicit to enable them to prepare their bids intelligently on a common basis.”
 

 The facts show that plaintiff tried to. secure information in order to submit an intelligent bid based on the work to be performed. Upon being told by the 'Town Clerk that there were no plans and specifications and that the gas inspectors -could provide the necessary information, plaintiff sought them out and, upon data derived from them, made his bid. It is apparent that Soileau and Fontenot were the only persons connected with the town able and qualified to give statistics and that they were authorized, at least by implication, to make representations on its behalf. Accordingly, it seems manifest that, since the town’s representatives misled plaintiff with respect to a very material fact, he would be entitled to have the agreement .set aside.
 

 But plaintiff does not seek an annulment -of the original contract. On the contrary, he says that this contract was supplemented and the inequalities thereunder rectified by the resolution of the Board of Aldermen of April 6th 1948. And he is contending that the effect' of the amended agreement authorizes retention of the original contract price of $6,900 and the additional compensation of $130 for each connection, over and above 12, requiring removal.
 

 This proposition is clearly untenable as the resolution of the Board of Aldermen specifically provides that the payment for the removal of any additional connections shall be limited to connections which have been made “since the letting of the contract”. Nevertheless, say counsel, plaintiff made it clear to the Board that he should receive $130 for the removal of each additional connection whether the connection had been made anterior or subsequent to the letting of the contract and that the reason why the resolution provides only for connections made since the letting of the contract is because all parties believed that the additional connections were within that category.
 

 This argument, however, finds support only from plaintiff’s statement. It is absolutely denied by the Mayor and Aldermen who are authentically corroborated by the resolution itself. Of course, plaintiff avouches that it was his belief that the resolution was intended to cover any addi
 
 *432
 
 tional connections, whether prior or subsequent to the letting of the contract.
 
 [4]
 
 But in order to have a binding contract there must be consent of both parties, which is lacking here. Therefore, the trial judge correctly found that plaintiff’s recovery could not be sustained on an existing contract but only upon a quantum meruit.
 

 While we agree with the judge that plaintiff is entitled to recover on a quasi or implied obligation, we believe that it was error to permit him to retain the contract price of $6,900 in view of the conclusion that that agreement should be annulled because of the misrepresentation of the town’s employees. It is obvious that, if that contract is not binding on plaintiff, he is not in a position to withhold its fruits, i. e., the contract price.
 

 Yet, paradoxically, we think, counsel for plaintiff argue in their brief that, since plaintiff’s bid of $6,900 .was based upon 12 connections (although not stated in the bid), it was a valid contract to that extent “But for the additional connections there was no contract, and plaintiff’s suit on a quantum meruit basis is to recover additional costs incurred for which the defendant received the benefit”. In submitting such a proposition, counsel apparently overlooked the fact that their entire case is predicated upon an annulment of the main contract because of misrepresentation forasmuch as the contract, as written, is. to cover all labor, materials, crossings and connections, and parol evidence was necessary to exhibit that this promise stemmed from misrepresentation on the part- of the town’s employees.
 

 It follows, therefore, that the entire agreement must be annulled and plaintiff relegated to recovery on a quantum meruit for the value of his work. Since there is no evidence in the record respecting the total value of the work performed by plaintiff, the case will be remanded to the district court with instructions to credit against whatever sum is found to be finally due plaintiff for all work on a quantum meruit basis, the sum of $6,900, which he has already received from the defendant.
 

 For the foregoing reasons, the judgment appealed from is set aside and the case is remanded to the trial court for further proceedings consistent with the views herein expressed.
 

 [1]
 

 . This, and many of the other facts found by us, is supported by the testimony of plaintiff’s witnesses which the judge of the lower court found to be genuine.
 

 [2]
 

 . The' trial judge premised this finding on an uncontradicted written statement of Soileau and Fontenot, given to plaintiffs shortly after the work was eompleted, that there were 18 connections requiring removal at the time plaintiff submitted his bid.
 

 [3]
 

 . Act 73 of 1926, as last amended by Act 127 of 1940 and 374 of 1948, Dart’s statutes 6730, requires that all public work exceeding $1,000 by any parochial, munieipal or other public corporation be advertised and let only upon competitive bidding.
 

 [4]
 

 . Even if the Board of Aldermen had acceded to the proposition advanced by plaintiff in his testimony, it is doubtful that the agreement would have produced a binding contract in view of the provisions of Act 73 of 1926, as amended. This is because an agreement, having for its object a material amendment or revision of a public works contract by increasing the amount of the contractor’s bid for the original work, would manifestly be violative of the statute which makes it mandatory that all public work exceeding $1,000 be let only upon competitive bidding. Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18.