ELLIS, Judge:
This is a suit for damages arising out of an alleged breach of contract. Plaintiff is Sidney Tobin. Defendants are the Louisiana State Board of Education and Southern University of Louisiana. After trial on the merits, judgment was rendered dismissing the suit, and plaintiff has appealed.
In March, 1969, plaintiff was employed teaching history at Southern University in Baton Rouge. Plaintiff held the degree of Master of Arts, and was in his sixth year as a teacher at Southern, where he held the rank of Assistant Professor. In a conference with Dr. Henry C. Cobb, Chairman of the Department of History and Geography, plaintiff told Dr. Cobb that he intended to pursue a Ph. D. degree in history during the academic year of 1969-1970. On March 19, 1969, Mr. Tobin wrote Dr. Cobb saying that he did not plan to work at Southern during the 1969-1970 academic year.
Plaintiff applied for admission to the graduate schools of Louisiana State University and the University of Texas. On or before May 1, 1969, plaintiff had either been rejected by both schools, or knew that he was going to be rejected. Shortly thereafter, plaintiff received a letter, dated May 1, 1969, reading in part as follows:
“President Netterville has authorized me to inform you that your employment for the 1969-70 Session has been recommended to the State Board of Education.
* * * * * *
“We are appreciative of the services that you rendered during the 1968-69 Session and we are hopeful that your professional services will be available during the ensuing year. Immediate knowledge of your availability will be appreciated.
“You may indicate your availability in the space provided below. Kindly sign and return the enclosed copy of this communication as soon as possible.”
At the bottom of the letter was a place for plaintiff to indicate whether his services would or would not be available to Southern for the coming year. Plaintiff did not sign or return the letter. When asked why he did not do so, he said:
“I thought that the letter did not mean too much. In other words I felt that I was making a commitment and the University was not making any commitment in the letter itself.”
Plaintiff testified that he had received a similar letter the year before, which he had not returned, and that he had eventually received his contract and taught at Southern. He further testified as follows :
“Q. Did this letter of May the first mean anything to. you insofar as your employment by Southern University or employment as a teacher at Southern University for the following school year was concerned; did you get all that?
“A. If I understand the thrust of the question, it meant that it was up to me whether or not — I mean Southern University was tendering to me a position and once I signed the letter it was an indication that a contract would be forthcoming.
“Q. Okay, but even though you didn’t sign the letter, did you still expect a contract to follow or did you not ?
“A. I still expected a contract to follow.
“Q. Why?
“A. Because it had followed in the past.”
In early August, 1969, plaintiff received a contract for the 1969-1970 school year, signed by the President of the University. Plaintiff signed it and returned it to the University within a few days.
In the middle of August, plaintiff testified that he had a brief chance meeting with Dr. Cobb at the post office at Southern. He testified that he told Dr. Cobb *825 that he had received a contract. He could not recall Dr. Cobb’s response. Dr. Cobb had relinquished his post as Chairman of the History Department to Dr. Robert Moran at that time, and had no recollection of such a meeting.
On September 5, 1969, plaintiff called Dr. Moran to ask why he had not been called to return to work. Plaintiff testified that he was told he would be placed on the registration committee, but heard nothing further. Dr. Moran testified that he told plaintiff that he had not been called because he was not expected to teach during the coming year.
On September 10, 1969, plaintiff sent a telegram to the President of the University, asking if the University intended to honor the contract of employment. He received an answer the same day, from the Dean of the College of Arts, stating:
“Appears contract missent through clerical error. Department Chairman indicated your intention to return to school. Consequently, no courses assigned you this fall. Kindly inform me of your plans for further study.”
Shortly thereafter, plaintiff consulted counsel, and this suit followed.
Plaintiff testified that had he not received the letter of May 1, 1969, and the contract, he would have sought employment elsewhere. He stated that he did not do so because he relied on the contract with Southern University.
It is clear from other testimony in the record that both the letter of May 1 and the contract were sent in error; that plaintiff was not expected to teach in the 1969-1970 academic year, and that a replacement was obtained for him that year.
It is fundamental in our law of obligations that there can be no contract unless the wills of the parties thereto coincide. Article 1766 of the Civil Code provides that no contract is complete without the consent of both parties. Article 1797 of the Civil Code provides:
“When the parties have the legal capacity to form a contract, the next requisite to its validity is their consent. This being a mere operation of the mind, can have no effect, unless it be evinced in some manner that shall cause it to be understood by the other parties to the contract. To prevent error in this essential point, the law establishes, by certain rules adapted to the nature of the contract, what circumstances shall be evidence of such consent, and how those circumstances shall be proved; these come within the purview of the law of evidence.”
Article 1762 of the Civil Code states:
“The contract must not be confounded with the instrument in writing by which it is witnessed. The contract may subsist, although the written act may, for some defect, be declared void; and the written act may be good and authentic, although the contract it witnesses be illegal. The contract itself is only void for some cause or defect determined by law.”
Even when there has been an unequivocal communication of consent, in writing, as in this case, the obligations, arising therefrom may still not be enforceable if the consent has been produced by some vice. Article 1819 of the Civil Code provides :
“Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as it provided in the preceding paragraph, but also where it has been produced by — Error; Fraud; Violence; Threats.”
Parol evidence may be introduced to show the existence of the vices of con *826 sent. Sylvester v. Town of Ville Platte, 218 La. 419, 49 So.2d 746 (1950); Blackwell v. Nagy, 122 So.2d 903 (La.App. 1 Cir. 1960).
We think it clear from the evidence offered herein that Southern University sent the contract to plaintiff by mistake, and that it never intended to offer him a position on the faculty for the 1969-1970 academic year.
We are further of the opinion that, since plaintiff never advised the University of any change in his plans to further his education, he must have known that he was not expected to teach in 1969-1970. We find that his own consent to the contract was flawed, because when he signed the contract he knew or should have known that it did not represent the true intention of Southern University. If the wills of the parties concurred in anything, it was that plaintiff would not teach at Southern during the 1969-1970 academic year.
The judgment appealed from is therefore affirmed, at plaintiff’s cost.
Affirmed.