317 So.2d 249 (1975)
Pauline Andrepont SAVOIE et al., Plaintiffs and Appellees-Appellants,
v.
Terry V. BILLS, Jr., et al., Defendants and Appellants-Appellees.
No. 5040.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1975.
Rehearing Denied August 28, 1975.
Writ Dismissed on Joint Motion October 17, 1975.
*250 Devillier, Ardoin & Morrow by J. Michael Morrow, Eunice, for defendants-appellants.
Guillory, McGee & Mayeux by Donald L. Mayeux, Eunice, for plaintiffs-appellees.
Before HOOD, CULPEPPER and WATSON, JJ.
*251 CULPEPPER, Judge.
The plaintiffs-landowners contend defendants constructed a pipeline across their property without a servitude. Plaintiffs seek $40 per rod for the servitude unlawfully taken, plus damages caused by construction. Alternatively, they seek removal of the pipeline.
Defendants answered, alleging they obtained oral permission from the landowners before constructing the pipeline, and that they secured a written servitude from two of the three landowners after the pipeline was installed. They contend they are indebted only to the landowner who did not sign a written servitude for her one-fourth interest.
At the trial, the district judge, over the objection of defendants, permitted plaintiffs to introduce parole testimony attacking the validity of the written servitude agreement on the grounds of fraud, error and no consideration. Parole evidence by plaintiffs was also admitted to vary the terms of the written agreement.
The judgment rendered grants defendants a servitude, which varies from the written agreement in that the right granted is restricted to the existing 2½ inch pipeline which was constructed, and is limited to the service of the one well, from which the line runs to a tank battery, the servitude to terminate upon abandonment of that well. The judgment ordered defendants to pay the three plaintiffs the sum of $3,000 for the servitude granted and damages to date. Plaintiffs' rights to future damages were reserved.
The defendants appealed, contending essentially that parole evidence should not have been admitted to vary the terms of the written servitude, which was signed by two of the three landowners, and that only the one landowner who did not sign the agreement should have been awarded compensation and damages.
Plaintiffs also appealed, contending the award of $3,000 for the servitude granted should be increased to $8,180. Alternatively, if such increased sum is not awarded, plaintiffs seek the removal of the pipeline.
The substantial issues are: (1) Was evidence admissible by plaintiffs to prove the written servitude agreement, signed by two of the three landowners, was void for fraud or error, where these vices of consent were not pleaded by plaintiffs? (2) If evidence of fraud or error was admissible, is this evidence sufficient to prove the written agreement is invalid?
We ultimately conclude the written servitude agreement is invalid for error of fact on the part of the two landowners who signed, and hence that defendants have no servitude for the pipeline which they constructed across plaintiffs' property. We order that the pipeline be removed and we remand the case for a determination by the district court of the amount of damages to which plaintiffs are entitled.
The plaintiffs are (1) Mrs. Pauline Andrepont Savoie, widow of Ariel Savoie, and owner of a one-half interest in the property; (2) Mrs. Elgie Mae Savoie LaFleur, a daughter of Mr. Savoie, and owner of a one-fourth interest; and (3) Mrs. Patricia Ann Savoie Oubre, also a daughter of Mr. Ariel Savoie, and the owner of the remaining one-fourth interest. Plaintiffs own a large percentage of the royalty for production from Ariel Savoie Well No. 1, the well served by the line in question.
In 1972 the owners of the well, defendants Gold King Production Company and Brown & McKenzie, Inc., decided to rework the well for secondary recovery. The other defendant, Mr. Terry V. Bills, Jr., a geologist, coordinated the operation for the well owners. As part of the work, it was necessary to construct a 2½ inch pipeline from the well to a tank battery. Defendants decided to try to obtain permission from plaintiffs to construct the line across their 90-acre tract of land since plaintiffs owned royalty and would benefit from any production.
*252 The owners of the well contracted with South Louisiana Contractors to lay the pipeline. Shorty Rozas, an employee of South Louisiana Contractors, made the first contact with Mrs. Savoie and Mrs. Oubre. These two landowners testified that Rozas told them the owners of the well already had the right to lay the pipeline and that they were going to install it. They say Rozas stated the purpose of his visit was only a courtesy to the landowners to let them know the line was going to be constructed and to try to place the line in a location where it would do the least damage to the crops of the tenant farmer. Mrs. Savoie and Mrs. Oubre say they told Mr. Rozas that if the well owners already had the right to install the line, then they could proceed, but they also told Rozas that the property was owned by the widow and two daughters, and if permission were necessary that all would have to sign the agreement.
The day after Rozas talked to Mrs. Oubre and Mrs. Savoie, he took Mrs. Oubre's husband on the land for the purpose of showing him where the pipeline would be laid. Mr. Oubre testified that Rozas told him the well owners already had the right to lay the line and that Rozas pointed out two possible locations for the line on plaintiffs' property. Oubre says that he made it clear to Rozas that if permission were required from the landowners, he had no authority to speak for them.
The testimony of Mr. Rozas is in conflict with that of Mr. Oubre. Rozas says he was under the impression that Mr. Oubre was handling the property for the three women, and that Oubre had given permission to proceed to lay the pipeline. Acting on this assumption, Rozas constructed the 2½ inch pipeline a distance of about 3,373 feet across plaintiffs' property.
On or about December 26, 1972, after the pipeline had been completed, Mrs. Savoie and Mrs. Oubre were contacted by Mr. Frank Dietlein for the purpose of securing from them a written servitude in the name of Mr. Terry Bills, Jr. Mr. Oubre was also present on that occasion. Mrs. Savoie and Mr. & Mrs. Oubre testified that Dietlein also stated, as Rozas had previously, that the owners of the well already had the right to construct the pipeline. They say he told them the line would be in the location of the "old Colorado Company right of way." However, Dietlein also said that because of legal technicalities it was necessary that the landowners sign an additional servitude agreement. These witnesses testified Dietlein assured them that the servitude would not be legal until the third landowner, Mrs. LaFleur, signed, and he asked that Mrs. Savoie and Mrs. Oubre go ahead and sign to save Mr. Dietlein another trip. So Mrs. Savoie and Mrs. Oubre signed the right of way agreement. At the time they signed, they were in error as to several facts. They did not know that the pipeline had already been constructed. It had been misrepresented to them by Mr. Rozas and by Mr. Dietlein that the well owners already had the right to install the pipeline. And, it was their understanding the line was going to be constructed in the location of an old right of way which had been previously granted to the Colorado Company.
After Mrs. Savoie and Mrs. Oubre had signed the servitude, Dietlein then requested they also sign an advance damage release. They then noticed there were no provisions for the payment of any consideration for the servitude or for the damages. They refused to sign the damage release. Additionally, they stated that some arrangement would have to be made with their tenant for damages to his crop. At this point, Dietlein left and went back to his office to draw up a tenant's release.
Dietlein then returned to Mrs. Savoie and Mrs. Oubre with the servitude, the damage release and the tenant's release. He left all of these documents with Mrs. Savoie and Mrs. Oubre, with the request *253 that they secure the signature of Mrs. LaFleur and the tenant and return the documents to him.
Mrs. LaFleur testified that the first she knew about the pipeline or the servitude was when Mr. Dietlein's secretary called her and said she had some papers for Mrs. LaFleur to sign. On that same day, Mr. & Mrs. Oubre came to Mrs. LaFleur with the papers. They discussed the matter and became suspicious of the way it had been handled by Rozas and Dietlein. They could not understand why they were being requested to sign another servitude if the well owners already had a right of way, and they were concerned that no offer had been made to pay them anything for the servitude or damages. The next day, they took the papers to their attorney.
Mrs. LaFleur never did sign any of the papers. The servitude which had been signed by Mrs. Oubre and Mrs. Savoie was kept by their attorney and was not delivered to defendants. It was never signed by the grantee, Mr. Bills. It is in the record in these proceedings only in compliance with a subpoena duces tecum issued on the request of defendants after this suit was filed.
Dietlein denies that he told Mrs. Savoie and Mrs. Oubre the defendants already had the right to construct the pipeline, or that it would be constructed along the old Colorado Company right of way. Dietlein testified it was his understanding that Rozas had already secured verbal permission for the laying of the pipeline, and that he was only to get the plaintiffs' signatures to the documents.
Plaintiffs and Mr. Oubre testified that they did not know until after they contacted their attorney that the pipeline had already been constructed. Furthermore, Mr. Oubre testified that when he finally saw where the pipeline was laid, it was not in either of the alternative routes which had been shown to him by Rozas. There is no contention by defendants that the pipeline was constructed on the old Colorado Company right of way, if such a servitude exists, and there is no showing by defendants that they have any other servitude for the pipeline in question.

EVIDENCE OF FRAUD AND ERROR INTRODUCED BY PLAINTIFFS WITHOUT PLEADING
The first issue is one of procedure. Plaintiffs' petition simply alleges that defendants constructed the pipeline across their property without oral or written permission. The petition does not mention that Mrs. Savoie and Mrs. Oubre had signed a servitude, but retained it in their possession, nor do plaintiffs allege that they signed the agreement through fraud or error. Defendants' answer admitted the construction of the pipeline, but alleges they had oral permission and a written servitude from two of the three landowners for the construction of the pipeline.
At the trial, plaintiffs sought to introduce testimony that the written servitude was void for fraud, error and no consideration. Defendants objected on the grounds that neither fraud nor error had been specifically alleged by the plaintiffs as a grounds to attack the validity of the written agreement. The district judge allowed the introduction of the evidence for the purpose of showing the invalidity of the written agreement for fraud or error.
The ruling of the trial judge in this respect was correct. LSA-C.C.P. Article 852 provides:
"The pleadings allowed in civil actions, whether in a principal or incidental action, shall be in writing and shall consist of petitions, exceptions, written motions, and answers. No replicatory pleadings shall be used and all new matter alleged in exceptions, contradictory motions, and answers, whether in a principal or incidental action, shall be considered denied or avoided."
*254 Jurisprudence under Article 852, and its source articles in our previous Code of Practice of 1870, has firmly established the rule that all new matters alleged in defendants' answer are deemed to be denied by the plaintiff, and that plaintiff may assert in bar thereof any grounds of fact or law, as if plaintiffs had specially pleaded them, Patton's Heirs v. Moseley, 186 La. 1088, 173 So. 772 (1937); Galiano v. Galiano, 213 La. 332, 34 So.2d 881 (1948); Liberal Finance Gentilly, Inc. v. Brister, 152 So.2d 331 (1st Cir. La.App., 1963); McNabb v. Food Town, Inc., 143 So.2d 144 (1st Cir. La.App., 1962); Airhart v. Airhart, 153 So.2d 140 (3rd Cir. La.App., 1963); Bielkiewicz v. Rudisill, 201 So.2d 136 (3rd Cir. La.App., 1967); G. J. Deville Lumber Company, Inc. v. Chatelain, 308 So.2d 428 (3rd Cir. La.App., 1975); Verret v. Norwood, 311 So.2d 86 (3rd Cir. La.App., 1975); and Humphries v. Puritan Life Insurance Company, 311 So.2d 534 (3rd Cir. La.App., 1975).
There is one situation which deserves special comment. In McNabb v. Food Town, Inc., supra, the plaintiff sued for damages for personal injuries received in defendant's store. The defendant answered, alleging a compromise and release had been signed by plaintiff in consideration of the payment of $320. At the trial, plaintiff admitted signing the release, but sought to introduce evidence to show that it was void because the sum stated in the release was not paid. The district judge sustained an objection to the evidence on the grounds that plaintiff had not pleaded fraud, error or lack of consideration. The Court of Appeal reversed. The Court stated that despite the fact that LSA-C.C.P. Article 856 requires that fraud or mistake "shall be alleged with particularity", this does not conflict with LSA-C.C.P. Article 852 which prohibits replicatory pleading. The Court held the plaintiff could urge fraud or error or any other grounds of fact or law in bar of the compromise agreement alleged in defendant's answer.
The decision in the McNabb case was criticized by Professor Henry G. McMahon, 24 L.Rev. at page 304, as being contrary to the jurisprudential rule that a party may not collaterally attack a compromise agreement but must, instead, as in the case of a judgment, bring a direct action to annul. It is noteworthy that Dean McMahon did not criticize the McNabb opinion on the grounds that fraud or error constitute an exception to the rule of Article 852 that replicatory pleadings are prohibited. He disagreed with McNabb only as to the special situation which involves compromise agreements, being of the opinion that a separate suit must be brought making a direct attack on the validity of such contracts.
In Bielkiewicz v. Rudisill, supra, plaintiff sued for personal injuries arising out of an automobile accident. Defendant's answer alleged a release which had been signed by the plaintiff. In a decision by Judge Tate, now a Justice on our Supreme Court, we decided to follow the McNabb case, although acknowleging that it had been criticized by Dean McMahon. We allowed the plaintiff to attack the release on the grounds of error, although plaintiff had not pleaded this vice of consent.
Defendant relies on Neck v. Neck, 169 So.2d 401 (3rd Cir. La.App., 1964). In that case, plaintiff sued for a partition by licitation of certain immovable property. Defendant filed an exception of no right of action, alleging that plaintiff had sold her interest in the property to the defendant. On the trial of the exception, plaintiff admitted signing the act of sale. However, plaintiff testified she did so through error on the representation of her husband, from whom she was then separated, that the sale would not be culminated until the completion of further negotiations. She also testified that she never received any part of the cash consideration stated in the deed. Defendant objected to the introduction of any parole evidence of fraud or error. The decision of this Court *255 in Neck states that "Parties to a written agreement involving the sale of an immovable may not, in the absence of allegation of fraud or error, introduce parole evidence for the purpose of contradicting, varying or adding to that written agreement." The decision sustains the exception of no right of action and dismisses plaintiffs' suit, without prejudice, however, to her right to bring another suit attacking the act of sale for fraud or error.
We recognize that Neck v. Neck appears to be in conflict with LSA-C.C.P. Article 852 and the jurisprudence cited above. Apparently no argument regarding replication was made in Neck. We think the decision is in error insofar as it is in conflict with LSA-C.C.P. Article 852 and the established jurisprudence. As regards the particular question of whether it is necessary for the plaintiff to specifically plead fraud and error in response to new matter urged in defendants' answer, the case of Bielkiewicz v. Rudisill, supra, from this Court is in direct conflict with Neck. We conclude the holding in Bielkiewicz is correct, and that in Neck is erroneous.

INVALIDITY OF THE SERVITUDE AGREEMENT FOR ERROR OF FACT
LSA-C.C. Article 1819 provides that there is no contract where consent thereto has been produced by error. Article 1820 provides that error is of two kinds, error of fact and error of law. Article 1821 states: "That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none." Article 1823 provides in part that error of fact invalidates a contract where the error "was a principal cause for making the contract." Article 1826 states that error (of fact) as to the principal cause of the agreement does not invalidate a contract unless the other party knew or should have known it was the principal cause.
Jurisprudence under these code articles has established the rule that a contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principal cause, Sylvester v. Town of Ville Platte, 218 La. 419, 49 So.2d 746 (1950); North Development Company, Inc. v. McClure, 276 So.2d 395 (2d Cir. La.App., 1973); Jefferson Truck Equipment Company, Inc. v. Guarisco Motor Company, Inc., 250 So.2d 211 (1st Cir. 1971) and the authorities cited therein.
Applying these rules to the present case, it is clear that when Mrs. Savoie and Mrs. Oubre signed this servitude agreement, they did so under error of fact as to a principal cause for making the contract. They were of the mistaken belief, based on false representations by Rozas and Dietlein, that the owners of the well already had a servitude for the line. Furthermore, they believed, because they were so advised by these agents of defendants, that the pipeline would be constructed on a servitude which the operators of the well already owned. The evidence is clear that these two ladies would not have signed the agreement had they known that the owners of the well did not have a servitude for the pipeline which had already been constructed, without their knowledge. Of course, defendants knew that these errors were the principal cause for the signing of the contract by the two landowners. The misrepresentations by Rozas and Dietlein were for the very purpose of securing the signatures.
Having concluded the written agreement is void for error of fact, it is unnecessary for us to consider the further persuasive arguments by plaintiffs that the agreement is additionally void for fraud on the part of defendants' agents, Rozas and Dietlein.
We find no justification under the facts or the law for the judgment of the *256 trial court which, in effect, rewrites a contract of servitude, which the parties did not intend and to which neither party agreed. It is not within the province of the court to alter or make new contracts for the parties, its duty being confined to the interpretation of the agreements the parties have made for themselves and, in the absence of any ground for denying enforcement, to render them effective, Stack v. Desoto Properties, 221 La. 384, 59 So.2d 428 (1952).
A further reason that the judgment of the district court cannot be allowed to stand is that even if the agreement signed by two of the three landowners were to be held valid as to them, the execution of the servitude would be suspended until the consent of the remaining coproprietor is obtained, or until defendants have followed the procedure for a partition provided by our Civil Code in the situation where a servitude has not been signed by all of the coproprietors of an estate. See LSA-C.C. Articles 738-742.
The defendant, Terry V. Bills, Jr., makes an additional argument that plaintiffs have no cause of action against him because he assigned whatever rights he had in the pipeline to the other two defendants. There is no executed copy of any such assignment in evidence. Bills did testify that he had assigned his interest in the line to the other defendants. Regardless of whether there is such an assignment, Bills is nevertheless liable in solido with the other defendants for the illegal construction of this pipeline on plaintiffs' land. Both Rozas and Dietlein were acting under his instructions. It was through the actions of Bills, as well as the other two defendants, that the line was installed. We conclude plaintiffs both alleged and proved a cause of action against Bills.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiffs and against the defendants, in solido, ordering that defendants remove from plaintiffs' land the pipeline in question. This case is remanded to the district court for a determination of the damages to which plaintiffs are entitled because of the illegal construction of the pipeline on their land. All costs of this appeal are assessed against the defendants. Assessment of costs in the district court must await a final judgment there.
Reversed and remanded.