336 So.2d 1058 (1976)
George Dean NUGENT et ux., d/b/a Quality Appliance and Carpet Company, Plaintiffs-Appellees,
v.
Harlton Kenneth STANLEY, Defendant-Appellant.
No. 5549.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1976.
*1060 Scotty G. Rozas, Lake Charles, for defendant-appellant.
Raleigh Newman, Lake Charles, for plaintiffs-appellees.
Before DOMENGEAUX, GUIDRY and BERTRAND, JJ.
GUIDRY, Judge.
The above numbered and entitled matter and the case entitled Stanley v. Nugent d/b/a Quality Appliance and Carpet Company, Number 5550 of the docket of this court, 336 So.2d 1064, were consolidated for trial in the lower court and on appeal. We decide both of these cases today and render a separate decision in the matter which bears our docket number 5550.
Suit number 5549 is one instituted by George Dean Nugent and his wife, Joy J. Nugent, hereinafter referred to as the Nugents, wherein they seek to rescind the sale of a business operated under the name "Quality Appliance and Carpet Company" made to them on December 4, 1972 by Harlton K. Stanley. Suit No. 5550 is a suit by Harlton K. Stanley, hereinafter referred to as Stanley, wherein the latter seeks judgment against the Nugents on a certain promissory note in the principal amount of $5000.00 given to secure payment of the credit portion of the purchase price of the disputed sale dated December 4, 1972.
The following facts are not disputed. In the year 1972 the Nugents moved their home from the State of Washington to Lake Charles, Louisiana. After arrival in Lake Charles the Nugents began to look around for an established business which they might purchase. Sometime in October of 1972 the Nugents responded to an advertisement which was placed in a local newspaper by Stanley offering to sell a business known as "Quality Appliance and Carpet Company" (hereinafter referred to as "Quality"), which consisted of a carpet sales and installation business and a small appliance repair shop. The Nugents were very interested in Stanley's offer to sell in that it was their intention that Mrs. Nugent would operate the business to be acquired and she was primarily interested in interior decorating. Negotiations between the parties extended over a period of approximately one and one-half months during which time the Nugents looked over the premises and business operation. Plaintiffs testified that during these negotiations it was made entirely clear to Stanley that they wished to purchase a going established business with a good reputation, good will in the community, and an established line of credit with carpet mills and other suppliers. Plaintiffs further testified that during these negotiations they were assured by Stanley that upon consummation of the sales transaction they would acquire in addition to the physical property some $12,000.00 to $15,000.00 of firm contracts for installation of carpet which had been secured by him from customers of "Quality", which contracts he would hold until the sale was complete in order that these might be turned over to the Nugents. On December 4, 1972 the sale was executed in authentic from the Nugents acquiring all of the stock of carpet, parts and merchandise, tools and supplies, fixtures and furnishings and the good will of the business. The consideration for the sale was the sum of $15,000.00, Stanley receiving on the day of sale $10,000.00 in cash and a promissory note of $5,000.00 due six months from date. As additional security for the $5,000.00 note the Nugents executed a conventional mortgage on property owned by them. In addition to the purchase of the business, the Nugents leased the business premises owned by Stanley situated at 3004 Common Street, Lake Charles, Louisiana, at a monthly rental of $212.82 and were granted an option to purchase these premises at the expiration of six months for the sum of $25,000.00. In the contract of sale Stanley reserved the right, in the event of default by the Nugents, to seize and sell the movables comprised in the sale or to re-enter the premises and assume the operation of the business. In either event Stanley reserved the right to pursue the Nugents, in the event of default, for the balance of the purchase price remaining unpaid.
*1061 Shortly following consummation of the sale problems between the parties arose in that, according to the Nugents, "Quality" enjoyed an extremely poor credit rating with its carpet and appliance suppliers which resulted in the new owners being unable to secure shipments of carpet on credit, and from some of "Quality's" former suppliers not even on C.O.D. Additionally, because the purchase was not made in compliance with Louisiana's Bulk Sales Law the new owners were threatened with suit for certain delinquent accounts due by Stanley. A second cause of dispute between the parties concerned the fact that, contrary to Stanley's alleged assurance that the Nugents would fall heir to some 12 to 15 thousand dollars of executory contracts for the installation of carpet, following the sale the Nugents received only two executory contracts, one with a church where no profit was made and the other with a bank official where no profit was intended.
Shortly prior to June 4, 1973 the Nugents, asserting invalidity of the sale because of Stanley's alleged misrepresentations as to his credit reputation and the amount of executory contracts which were to be transferred at the time of sale, gave notice that they were vacating the premises and that Stanley could re-enter if he chose. Following this notice, Stanley re-entered the premises, caused an inventory to be made and began to again operate the business.
On June 4, 1973 the Nugents filed the instant suit seeking a rescission of the sale of December 4, 1972. Stanley answered the suit and admitted that he assured plaintiffs that he had a well established business, with good will and an established line of credit, plus approximately $12,000.00 worth of contracts for the installation of carpet but denied any inference that "such casual statements and/or representation(s) may have formed part of the contract of sale and assignment, the terms of which are best evidence of itself." In his answer, Stanley reconvened and claimed damages for alleged dissipation of business and destruction of the good will of "Quality". Some few days following institution of this suit, Stanley filed the suit which bears our docket number 5550 seeking judgment on the $5,000.00 note executed by the Nugents.
The district court, considered this suit to be one in redhibition, and pursuant to the authority contained in LSA-R.C.C. Articles 2541 and 2543, decreed a reduction of the price of sale of December 4, 1972. In his written reasons the trial judge set forth his conclusions as follows:
"Guided by these rules, and considering the value of the merchandise, tools, fixtures, and supplies on hand at the time of the sale, together with the amount of business passed on to the buyer, and a reappraisal of the good will and potential of the business as reflected by past income and the apparent credit problems, the court concludes that the value of the business could not have exceeded $7,500 at the time of the sale. Of this amount, $2,138.31, was turned back in to Stanley. Accordingly, since Mrs. Nugent paid $10,000 and since she is entitled to a reduction of the price in the amount of $2,500, together with the further reduction in the amount of $2,138.31, representing the amount of property returned to Stanley, Mrs. Nugent is entitled to a refund of $4,638.31. She is also entitled to cancellation of the promissory note in the amount of $5,000 due June 4, 1973, as a further reduction of the price. Finally, she is entitled to the cancellation of the real estate mortgage which was given as security for that note."
Formal judgment was signed in these consolidated matters on July 8, 1975. Stanley has taken a devolutive appeal in each of the consolidated cases. The Nugents have neither appealed nor answered the appeal of Stanley.
At the outset we notice that although the trial court found that Stanley's reconventional demand was totally without merit (Tr. pg. 162) no formal rejection of this demand appears in the signed judgment rendered on July 8, 1975. There being no signed judgment dismissing Stanley's *1062 reconventional demand we dismiss that part of Stanley's appeal ex proprio motu as being premature. LSA-R.C.C.P. Articles 1911 and 2083.
The trial court concluded that the re-entry of the premises by Stanley on June 4, 1973 amounted to a voluntary rescission of the sale, Stanley, however, being reserved the right to sue for any deficiency in the amount owed him under the contract. Having so concluded the trial court did not decree a rescission of the sale of December 4, 1972 in its signed judgment. As aforestated, the trial court reached the further conclusion that plaintiff was seeking rescission of the sale by reason of redhibition and in lieu of rescission (which he considered occurred on June 4, 1973) decreed a diminution in the purchase price under authority of LSA-R.C.C. Articles 2541 and 2543.
In both of these conclusions we find that the trial court erred for such conclusions are mutually exclusive.
A sale which has been rescinded, voluntarily or otherwise, ceases to exist. There can be no reduction in the consideration which has been paid in connection with a sale which has been rescinded. When a sale is rescinded the parties are returned as nearly as possible to the situation as it existed prior to the sale. The vendee returns the property to the vendor and the vendor returns the purchase price subject to whatever adjustments are necessary for his use of the property during the period he possessed same. Jones v. Deloach, 317 So.2d 240 (La.App. 2nd Cir. 1975).
We do not find that Stanley's re-entry of the premises on June 4, 1973 amounted to a voluntary rescission of the sale of December 4, 1973. In the sale contract Stanley had reserved the right to re-enter the premises. The Nugents had abandoned the premises and in fact had no right to the continued occupancy of these premises after June 4th as their lease and option to purchase had both expired. The Nugents did not purchase the premises re-entered but rather only the business formerly operated therein.
We likewise find that the trial court erroneously concluded that the Nugents seek rescission of the December 4th sale by reason of redhibition. The plaintiff's petition and the evidence adduced in support of the allegations of fact therein contained clearly reflect that plaintiffs seek to rescind the sale in question because their consent to the contract of sale was produced by error of fact which was a principal cause for making the contract.
Although we determine that the trial court erred in its application of the law, we find no manifest error in its factual findings.
The trial court made the following factual findings which we briefly summarize:
(a) The Nugents informed Stanley and the latter was well aware that the Nugents wished to purchase a going established business with a good reputation and an established line of credit with carpet mills and other suppliers.
(b) Stanley assured the Nugents of his good credit reputation and that upon consummation of the sale the latter would fall heir to some $12,000.00 to $15,000.00 worth of executory contracts for the installation of carpet and such assurances continued up to the date of sale.
(c) Stanley had a poor credit reputation with some carpet mills, as a result of which the Nugents had much difficulty in securing any credit, some suppliers even refusing to do business with "Quality" on a C.O.D. basis.
(d) Contrary to Stanley's representations and assurances the Nugents received only two executory contracts for the installation of carpet, one with a church where no profit was made and the other with a bank official where no profit was intended.
(e) Stanley incorrectly represented and in fact grossly exaggerated the value and income of his going business.
Finding no manifest error in the above factual findings we determine on the basis thereof that plaintiffs are entitled to a rescission of the sale of December 4, 1972 said *1063 sale being invalid by reason of lack of consent on the part of the Nugents.
It is well settled in our law that consent to a contract may be vitiated by an error of fact and that without consent there is no contract. LSA-R.C.C. Articles 1819, 1820, 1923.
Article 1821 states "That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none." Article 1826 provides in effect that error of fact as to the principal cause of the agreement does not invalidate a contract unless the other party knew or should have known it was the principal cause.
The jurisprudence under these code articles establishes that a contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principal cause. Savoie v. Bills, 317 So.2d 249 (La.App. 3rd Cir. 1975).
Considering the factual findings made by the trial court, which factual findings we do not disturb, we have little difficulty in concluding that the Nugents executed the contract of sale of December 4, 1972 under error of fact as to a principal cause for making the contract. The principal causes which prompted the Nugents to agree to the sale of December 4, 1972 was their belief that they were acquiring a going business with a good credit reputation and that upon consummation of the sale they would immediately acquire firm executory contracts for the installation of carpet. The evidence clearly indicates that the Nugents received neither, for Stanley's credit reputation with carpet suppliers was poor and upon consummation of the sale there were but two small contracts for the installation of carpet neither one of which proved to be profitable. The evidence is clear that the Nugents would not have agreed to the sale of December 4th had they been aware of Stanley's poor credit reputation and the fact that the business which they were acquiring had little or no contracts for work. It is likewise clear that Stanley was well aware that the Nugents were not particularly interested in the value of his inventory but were keenly and mainly interested in acquiring his business which they thought was a going business with a good credit reputation. Having concluded that the contract of sale of December 4, 1972 is void for error of fact we will order its rescission and amend the trial court judgment to that extent.
In concluding that the sale of December 4th is invalid for want of consent, we note that we have attributed no significance to the trial court's finding of fact that defendant grossly exaggerated the value of the business. It is settled that misrepresentations with respect to value are not such an artifice as will invalidate an agreement of sale if the purchaser is in such a situation that he might with ordinary attention have detected the falsehood. LSA-R.C.C. Article 1847(3); Jackson v. Fonentot Building Inc., 314 So.2d 516 (La.App. 1st Cir. 1975, writ refused Sept. 25, 1975).
Appellant argues that the trial court erred in allowing the introduction of parole evidence concerning the representations made by Stanley to the Nugents prior to the confection of the sale. Appellant suggests that such evidence was inadmissable as varying or contradicting the recitals in the authentic act of sale and cites LSA-R.C.C. Articles 2236 and 2276. Appellant's argument is not persuasive. It is settled that parole evidence is admissable for the purpose of establishing that an agreement is subject to annulment because of lack of consent due to misrepresentation and error. Sylvester v. Town of Ville Platte, 218 La. 419, 49 So.2d 746; Overby v. Beach, 220 La. 77, 55 So.2d 873.
Appellees being entitled to rescission of the sale of December 4th are entitled to a return of the purchase price paid by them subject to their return of the property to Appellant together with whatever adjustments are necessary to compensate *1064 the vendor for their use of the property during the period from December 4, 1972 to June 4, 1973. The trial court determined that the Nugents were transferred $3,257.31 of physical assets on December 4, 1972 and returned to Stanley property of the value of $2,138.31, leaving a difference of $1,119.00. We find no error in this conclusion of the trial court. Considering the amount paid by the Nugents at the time of sale, i.e., $10,000.00 cash and a promissory note of $5,000.00, Appellees would be entitled to cancellation of the note (which was ordered cancelled by the trial judge) and a return of $8,881.00 less such sum as would reasonably compensate Stanley for the use of property transferred to the Nugents during the period December 4, 1972 to June 4, 1973. We need not calculate what a reasonable figure would be for such use in that under the facts of this case appellees would be entitled to a return of more money than that which was awarded to them by the trial court. We are powerless to change the award made by the trial judge in that appellees have neither appealed nor answered the appeal of plaintiff.
For the above and foregoing reasons we dismiss plaintiff-appellants appeal insofar as his reconventional demand is concerned. Further, the trial court judgment is amended to the extent that we now decree that the sale of December 4, 1972 executed by Harlton K. Stanley d/b/a Quality Appliance & Carpet Company, as vendor, to George Dean Nugent and Joy Jean Nugent, as vendees, is invalid for lack of consent and is accordingly order rescinded. In all other respects the judgment of the trial court is affirmed, appellant to pay all costs of this appeal.
AMENDED AND AFFIRMED.