457 So.2d 748 (1984)
Robert W. MORELAND, Plaintiff-Appellee,
v.
Lamar SMITH, Defendant-Appellant.
No. 16510-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
Rehearing Denied October 26, 1984.
Writ Denied December 14, 1984.
McConnell, Harris & Associates by Charles E. McConnell and John B. Slattery, Jr., Springhill, for defendant-appellant.
*749 Campbell, Campbell & Johnson by John T. Campbell, Ninden, for plaintiff-appellee.
Before PRICE, JASPER E. JONES and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
The plaintiff, Robert W. Moreland, sued the defendant, Lamar Smith, for $150,000, the purchase price for some bank stock previously transferred to the defendant. The trial judge ruled in favor of the plaintiff. The defendant appealed alleging that the trial judge should have declared the sale null on the grounds that Smith was under a unilateral error of fact. The judgment for the plaintiff is affirmed for the reasons hereinafter explained.
In a letter dated July 19, 1983, to the directors of the Claiborne Bank and Trust Company, Planters Bank and Trust Company offered to purchase all the outstanding stock of Claiborne Bank for $3.00 per share. After much discussion, it became clear that three of the Claiborne directors wanted to sell. Phillip Sims, a director who wanted to prevent the sale, offered to find buyers who would purchase the stock of the "dissenting directors" at the same price. Lamar Smith was the buyer that Phillip Sims located to purchase 50,000 shares of Robert Moreland's stock.
Smith told Sims that he needed thirty days to raise the money necessary to complete the transaction. Moreland related through Sims that he wanted a contract to sell and buy with earnest money. The parties eventually agreed to the amount of $50,000 earnest money. Sims, Moreland and Smith were all present in the attorney's office while the contract was dictated, amended and drawn up to be signed in authentic form. The contract stated simply that Moreland agreed to sell and Smith agreed to buy 50,000 shares of Claiborne Bank stock for $3.00 per share. The sale was set to take place within thirty days of the contract date, August 17, 1983. The parties each wrote a check for $50,000 to be held in escrow by the attorney as earnest money.
On Friday, September 16, 1983, the parties met in the office of J.D. St. Clergy, president of Claiborne Bank. Smith wrote a check payable to Moreland drawn on the "Lamar Smith Investments" account at Citizens Bank & Trust Company, a bank in Springhill, Louisiana, where Smith is a director. Moreland delivered a stock certificate issued to Lamar Smith Investments for 50,000 shares. Moreland deposited the check into his account at Claiborne Bank in the presence of Smith.
Smith alleges that on Sunday, September 17, 1983, he found out for the first time that Claiborne Bank was having some deficient capitalization problems which had involved intervention by the Federal Deposit Insurance Corporation. On September 19, 1983, Smith wrote a letter to Moreland explaining why he stopped payment on the check:
"... there was too many unknowns with the main reason being, not knowing the true book value. What happens October 18, 1983, is this stock here in question going to be part of control stock? What is the actual loan loss going to be?"
Plaintiff filed this suit asking the defendant to make his check good. The defendant argues that the sale should be rescinded because of unilateral errors which vitiated his consent. Specifically, defendant alleges: (1) he thought the book value of the stock was $3.00 per share, when in fact the testimony establishes the value to be $1.68 per share; (2) he never received information on bad loans that he had requested; and (3) he thought the stock was part of a "control group." Defendant further argues that these conditions were known to Sims whose knowledge should be imputed to Moreland as Sims' principal.
The first issue is whether Sims acted as an agent for Moreland, or should be deemed to have acted as an agent for Moreland. The trial judge found that the evidence failed to establish an agency relationship. We agree. The record reflects that Sims was trying to find a buyer for Moreland's stock to prevent a takeover by *750 Planters Bank. Sims was not working for the welfare or benefit of either Moreland or Smith but out of his own desire to block the takeover. Sims did not have the power to execute the agreement to sell or the final sale. Moreland had no control over Sims, nor did Moreland make it appear that Sims had any authority to act for him. There was no agency.
The second issue is whether the contract of sale should be rescinded for the errors which Smith alleges vitiated his consent. The trial judge properly allowed parole evidence to be heard on the issue of error. At the close of evidence, the trial judge ruled the defendant failed to prove his defense. We agree.
Defendant contends that there is no consent when the consent has been produced by error, and cites the following articles of the Civil Code:
Art. 1819. Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by
Error;
Fraud;
Violence;
Threats.
Art. 1821. That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.
Art. 1823. Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it it is made, or to the subject matter of the contract itself.
Art. 1825. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made.
Art. 1826. No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.
Art. 1827. But wherever the motive is apparent, although not made an express condition, if the error bears on that motive, the contract is void. A promise to give a certain sum to bear the expenses of a marriage, which the party supposes to have taken place, is not obligatory, if there be no marriage.
Smith claims to have been mistaken about the value of the stock. He contends that he thought the $3.00 per share price was the book value of the stock. It is undisputed that Moreland did not represent the price to be the book value, so there is no evidence of fraud or misrepresentation on his part. There is abundant evidence in the record that the fair market value of the stock was $3.00 per share. Smith is a bank director who dealt at arm's length in the transaction; if he desired to make an independent assessment of the book value before the sale, he could have done so. Even when there is a false assertion as to value it will not invalidate a sale when the complaining party might with ordinary attention detect the falsehood. La.Civil Code Article 1847(3); Nugent v. Stanley, 336 So.2d 1058 (La.App. 3d Cir.1976).
Smith alleges that he never received information on bad loans that he had requested. The fact, according to his own testimony, that he requested the bad loan information before he signed indicates that the information was not a "principal cause" of the contract. Smith did not request that the sale be made conditional on receipt of the information. He signed the contract *751 and completed the sale without having received the information he says he asked for. He cannot be heard to complain of failure to receive the information after the sale when he had adequate opportunity before the sale to secure that data.
Finally, Smith explains that he thought the stock was part of a "control group." Even if the contract had expressly been conditioned on the stock being part of the "control group," the record is devoid of evidence that the stock purchased is not in a "control group." Consequently, no error has been proved.
The judgment of the trial court is affirmed at appellant's cost.

ON APPLICATION FOR REHEARING
Before HALL, JASPER E. JONES, FRED W. JONES, Jr., SEXTON and PRICE, JJ.
PER CURIAM.
In his application for a rehearing defendant correctly points out that the record does contain evidence that the stock in question was not part of the control group stock. However, this does not change the result of the opinion since the record further establishes that plaintiff was unaware prior to the contract to sell the stock that defendant desired it to be part of the control group. Under these circumstances, defendant's unilateral error would not justify a rescission of the stock sale.
For these reasons, the application for rehearing is denied.