DOUCET, Judge.
This appeal arises from an attempt by Sara, Inc. to recover from National Union Fire Insurance Co. of Pittsburgh, Pa. and the McElveeri Insurance Agency, damages sustained as a result of a fire to an aircraft insured by National Union.
On October 12, 1976, Sara, Inc. purchased an Aero Commander aircraft. Sara financed a part of the purchase price through Calcasieu Marine National Bank. Sara gave the bank a promissory note secured by a chattel mortgage on the aircraft properly recorded under both the Louisiana and Federal laws governing the registration of chattel mortgages on aircraft. On October 15, 1981, Sara sold the aircraft to Richard Stiverson and L.W. Patterson, d/b/a Pamyson. Pamyson assumed the unpaid indebtedness to Calcasieu Marine which was secured by the chattel mortgage on the aircraft.
In late 1981, Calcasieu Marine notified Sara that Pamyson was not making the monthly payments to the bank on the mortgage of the aircraft and was not keeping insurance on the aircraft as required by the terms of the mortgage. As a result of notice, Sara obtained a policy of insurance on the aircraft through the McElveen Insurance Agency on December 18, 1981. That policy was renewed on December 18, 1982.
*723 On January 18, 1982, Pamyson filed suit against Sara to rescind the sale of the aircraft based on redhibitory vices. On January 19, 1982, Sara filed suit against Pamyson to enforce the sale.
In the late evening of April 27, 1983 or the early morning of April 28, 1983, the aircraft burned. With the exception of the left engine and the right engine, which had been removed for repairs, the aircraft was almost totally destroyed by the fire. Sara submitted a proof of loss to National Union on May 16, 1983 in the amount of $450,-000.00, claiming the alleged value of the aircraft less the $10,000.00 deductible provided for under the policy. The proof of loss was received on May 19, 1983. On July 20, 1983, 62 days after receipt of the proof of loss, National Union, through Southeastern Aviation, tendered the sum of $225,924.90 to Sara. Sara refused the tender. The defendant deposited the funds into the registry of the U.S. District Court for the Western District of Louisiana. The funds were later withdrawn by Sara and Calcasieu Marine, jointly.
On October 11,1984, only four days prior to the trial of this matter, a consent judgment was entered between Pamyson and Sara rescinding the sale of the aircraft.
At the conclusion of the plaintiffs case in this matter, the trial court granted a motion to dismiss McElveen from the suit on a finding that McElveen did not breach any contract with Sara or commit any negligence in not causing a loss payee to be named in the policy issued by National Union. After completion of a trial on the merits, the trial judge found that: 1) National Union had conceded by its tender of payment to Sara that Sara had an insurable interest in the aircraft; 2) that the judgment rescinding the sale of the aircraft in the suit between Sara and Pamyson had the legal effect of restoring the ownership of the aircraft to Sara as though it had never been sold; 3) that the value of the aircraft at the time of its loss was $450,-000.00 and that the undamaged engines, which were retained by Sara in opposition to the terms of the insurance policy, were worth $25,000.00; 4) that National Union was not arbitrary, unreasonable, or without probable cause in its failure to tender payment until 62 days after submission of a proof of loss, since a lawsuit was pending to determine Sara’s ownership interest.
Based on these findings, the trial court rendered judgment in favor of Sara, Inc. and against National Union for $425,-000.00, subject to a credit of $255,924.90 previously received by Sara, and rejecting Sara’s claim for penalties and attorney’s fees.
On October 26, 1984, National Union moved for a new trial, which was denied on November 2, 1984 based on its failure to sufficiently set forth the grounds upon which it was based.
On November 15, 1984 National Union again moved for a new trial based upon the contention that in compromising its lawsuit against Pamyson, Sara caused National Union to lose its subrogation rights on any amount it might be required to pay under the insurance policy. This motion for new trial was again rejected. The trial judge stated in his reasons that:
“In the event that Sara has a right of recovery against Patterson and Stiveson, because Patterson and Stiveson caused the fire loss to the insured aircraft for which National Union had to pay Sara, National Union is still presently entitled under its subrogation agreement from Sara to pursue or litigate such a claim against Pattersonand Stiveson and collect from them if they can establish their liability.
That lawsuit between Sara and Patterson and Stiveson, was a lawsuit by which Sara sought to enforce the sale of the insured aircraft to Patterson and Stive-son and Patterson and Stiveson in turn sought to rescind the sale of the insured aircraft from Sara to them because of redhibitory defects. The Judgment in that lawsuit resulted in relief being granted between these parties only rescinding the sale of the insured aircraft and ordering return of the purchase price and cancellation of other consideration *724 for the sale. The judgment did not adjudicate any other rights between the parties. See Exhibit P-1. The subrogation agreement contained in the insurance contract between Sara and National Union provides only that National Union shall be subrogated to all of Sara’s rights of recovery for damages to the aircraft against any person or organization which caused such damages and that Sara would do nothing after a loss to prejudice such rights of recovery.”
The defendant appealed the trial court’s judgment on the trial on the merits. We affirm and amend.
As was stated by the trial judge, the issue here is not whether Sara had an insurable interest in the aircraft. This was admitted by National Union by its action in tendering the amount due and owing to Calcasieu Marine on the promissory note. The issue is rather the amount of Sara’s insurable interest.
On October 11, 1984, Sara and Pamyson entered a consent judgment rescinding the sale of the aircraft. A sale which has been rescinded, voluntarily or otherwise, ceases to exist. Nugent v. Stanley, 336 So.2d 1058 (La.App. 3rd Cir. 1976). It is abrogated from the beginning and the parties are restored to their relative positions which they occupied prior to the sale. Charles v. Dixie Auto Sales, Inc., 282 So.2d 561 (La.App. 3rd Cir.1973). The rescission of the sale of the aircraft abrogated the sale. In effect no sale occurred. As a result, Sara as owner, sustained a loss for the full amount of the value of the aircraft at the time of its destruction. Pamyson sustained no part of the loss since it was put back in the position of never having owned the aircraft.
Mr. Thomas Rogers qualified as an expert in the field of appraisal and evaluation of used aircraft. His uncontradicted testimony on behalf of the plaintiff, set the value of the aircraft at $450,000.00. This testimony provides a reasonable factual basis for the credibility evaluation of the trial court. Canter v. Koehring, 283 So.2d 716 (La.1973). We find no manifest error in the trial court’s reliance on this testimony in setting the quantum of damages. However, we believe that the award should have reflected certain adjustments. Beginning with Mr. Rogers’ calculation of the market value of a similar aircraft in good condition at $450,000.00, it is first necessary to reduce the award by the $10,000 deductible amount under the insurance policy. Next, it is necessary to deduct the amount of $63,000.00, the amount, according to Mr. Rogers, required to overhaul or replace the malfunctioning engine removed from the aircraft before the fire. This adjustment results in an amount of $377,-000.00, subject to a credit of $255,924.00 previously received by Sara. We believe this amount to be a correct award.
Defendant argues here, as he apparently did in his motion for new trial that Sara’s action in compromising Pamyson’s action for rescission caused the loss of their rights of subrogation, which Sara was bound to protect. We agree with the trial court’s interpretation of the subrogation agreement contained in the insurance contract between Sara and National Union. That is, National Union is, by that agreement, subrogated to all of Sara’s rights of recovery for damages to the aircraft against any person or organization causing the damage. To interpret the subrogation agreement otherwise would go beyond the clear intent of the provision. Courts are bound to give legal effect to contracts according to the true intent of the parties. This intent is to be determined by the words of the contract when the words are clear and explicit and lead to no absurd consequences. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), La.C.C. art. 1945.
This right of subrogation against the suspected tortfeasor, if any, was in no way affected by the judgment of rescission of the sale between Pamyson and Sara, though the right may by now have prescribed.
For the above and foregoing reasons, the judgment of the trial court is affirmed in *725 part and amended to reflect an award of $377,000.00. Costs of this appeal are assessed against the defendant.
AFFIRMED IN PART AND AMENDED.