324 So.2d 539 (1975)
Ben G. O'NEAL, Plaintiff-Appellant,
v.
Jimmie P. CASCIO, Defendant-Appellant.
No. 12706.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1975.
James E. Franklin, Jr., Shreveport, for appellant, Ben G. O'Neal.
Nelson & Pugh by Sydney B. Nelson, Shreveport, for appellant, Jimmie P. Cascio.
Cook, Clark, Egan, Yancey & King by Sidney E. Cook, Shreveport, for appellee, third party defendant, James B. Wells.
Before BOLIN, HALL and DENNIS, JJ.
DENNIS, Judge.
This appeal arises out of a jury trial involving a promissory note given in connection with an attorney-client employment contract. Ben G. O'Neal, plaintiff, alleging himself to be the owner and holder in due course for value of the note, sued defendant, Jimmie P. Cascio, the maker of the note, for the balance due thereon, and Cascio filed a third party demand against James B. Wells, the original owner of the note.
During the latter part of November, 1973, Cascio was charged in a complaint *540 filed by the United States Attorney with obstruction by extortion in violation of 18 U.S.C. § 1951. He immediately sought and retained the services of Wells, a Bossier City attorney. At their initial conference on November 26, 1973, Wells advised Cascio that the amount of the attorney's fee could not be set at that time because Wells could not tell how much work would be involved. After informing himself about the charge, Wells wrote a letter to Cascio on December 6, 1973 describing the nature of the charge, the maximum penalty involved, the kind of legal services which would be needed, and the amount of attorney's fee he would charge. On December 10, 1973 Cascio called on Wells at his office and, after a conference with the attorney, signed a written contract employing Wells as his lawyer for a fee of $15,000. At this time he also executed a promissory note, which is the subject of this litigation, in the amount of $15,000, payable in monthly installments of $1,250. Cascio paid the first installment of $1,250 on December 10, 1973 and a second on January 7, 1974.
Cascio initiated efforts which led to a conference between himself, Wells, the United States Attorney and others. After this conference, Cascio volunteered to appear before the grand jury and answer any questions. Wells advised against this action, but Cascio went to the hearing on January 14 and 15, 1974 and, although he was not actually called as a witness, answered some questions put to him by F.B.I. agents outside the grand jury room. After this questioning he was told by the agents that the charge against him would be dropped. On the same day, January 15, 1974, Cascio went to Wells' office and informed him that the charge would be dropped. Several days later Cascio received a letter from O'Neal stating that he had purchased from Wells the $15,000 note signed by Cascio. The letter was dated January 11, 1974 but was enclosed in an envelope postmarked January 21, 1974. On January 28, 1974 the complaint against Cascio pending in the United States District Court was dismissed.
Cascio employed other counsel who wrote letters to O'Neal on February 8, 1974 and Wells on February 10, 1974 advising them the note would not be paid. Subsequently O'Neal filed this suit against Cascio claiming to be a holder in due course of the note and seeking payment for the balance due. Cascio answered the suit denying that O'Neal was a holder in due course, denying that he was liable to Wells for any more than the fair value of his services which were alleged to be $500, and filed a third party demand against wells demanding that Wells hold him harmless from any judgment in favor of O'Neal and demanding refund of $2,000 of the $2,500 previously paid.
The case was tried to a jury which returned a verdict in favor of the defendant, Cascio, rejecting the demands of the plaintiff, O'Neal. The jury further returned a verdict in favor of the third party defendant, Wells, rejecting the demands of Cascio against him. Court costs were assessed equally to O'Neal and Cascio. Appeals were taken from a judgment conforming to the verdicts by O'Neal and Cascio.
On appeal, O'Neal contends:
(1) The trial judge erred in permitting a jury trial on the suit by plaintiff against defendant because the request for a jury was not made timely.
(2) Cascio is not entitled to raise the defenses of failure of consideration or mistake and error against O'Neal because he is a holder in due course.
(3) There was, in fact, no failure of consideration as the $15,000 fee was reasonable under the circumstances and Cascio is bound by his arms-length contract.
(4) There was no error or mistake as all the circumstances were explained to Cascio by Wells and he agreed to pay the $15,000 fee.
*541 Cascio contends on appeal that the trial court erred in assessing ½ of the court costs against him. He also appealed so as to protect his rights under the third party demand in the event of reversal with respect to the main demand.

1. The Trial Court Properly Allowed a Trial by Jury
The petition in the principal demand was filed on March 11, 1974, by O'Neal. Cascio answered and filed the third party demand against Wells on April 22, 1974. After Wells filed exceptions and a motion for a summary judgment, Cascio filed an amended third party petition on July 22, 1974 demanding a trial by jury on both the principal and third party demands. On the same day the trial court entered an ex parte order that the case be tried by jury. On August 5, 1974 O'Neal filed a motion to strike the request for a jury trial as to the principal demand on the ground that it was untimely. Wells answered the third party petition on October 7, 1974. The trial court overruled the motion causing the entire case to be tried before a jury.
The Code of Civil Procedure, in pertinent part, provides:
"Art. 1731. Issues triable by jury
Except as limited by Article 1733, the right of trial by jury is recognized.
The nature and amount of the principal demand shall determine whether any issue in the principal or incidental demand is triable by jury."
"Art. 1732. Demand for jury trial
A party may demand a trial by jury of any issue triable of right by a jury in a pleading filed no later than ten days after the service of the last pleading directed to such issue."
Article 1731 recognizes the right of trial by jury in all civil cases, subject to exceptions not here pertinent. When read in conjunction with this provision, Article 1732 requires a trial court to grant a trial by jury of any issue triable of right by a jury if requested within the prescribed delay. The question raised by the instant proceeding, however, is whether a trial court may in its discretion grant a trial by jury even after the delay has elapsed. In the absence of any statutory prohibition, and in view of the well established policy of our law favoring a litigant's right to a jury trial, e.g., see Champagne v. American Southern Insurance Company, 295 So.2d 437 (La.1974); Arrington v. McCarty, 136 So.2d 119 (La.App., 3d Cir. 1962), we conclude the legislature did not intend to preclude the granting of an untimely request for a jury trial by a court acting within its sound discretion and without prejudice to adverse parties.
No contention has been made in the instant proceeding that any party has been prejudiced by the trial court's order that the case be tried by jury, and we find no abuse of discretion by the trial judge in this respect from our review of the record.

2. The Evidence Justifies A Finding That There was Error as to A Principal Cause of the Contract
During his early investigation of the charge against Cascio, wells attended a preliminary hearing in the case on December 4, 1973. There he learned that portions of F.B.I. tape-recordings of Cascio's conversations on which the government's case was based were inaudible or unintelligible. However, on December 6, 1973, when Wells wrote to Cascio, he did not mention this possible fatal weakness in the government's case, but instead expressed his view that Cascio would apparently be indicted, go to trial, and, if convicted, be exposed to a possible fine of $10,000 and a *542 20 year prison sentence. Therefore, Wells' letter stated, it would be necessary, in order to properly defend Cascio, to take depositions of witnesses, investigate jurors and spend a minimum of a year to 1½ years in and out of court. There is evidence in the record that Cascio's co-defendant had assured Wells of Cascio's innocence and seemed willing to accept total responsibility for the events leading to the charges being filed. There is also evidence that Cascio had never been charged with a serious crime before this and was a respected member of the community. Yet, Wells testified he really thought Cascio could have received a 20 year penitentiary sentence. Cascio testified that Wells never did say there was a possibility the charges would be dropped but stated that Cascio would be indicted and go to trial.
Errors may exist as to all circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself. La.C.C.Art. 1823. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made. La.C.C. Art. 1825. No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it. La.C.C. Art. 1826. In all cases, however, when the information, which would have destroyed the error, has been withheld by the other party to the contract, it comes under the head of fraud, and invalidates the contract. La.C.C. Art. 1832.
Based on the evidence the jury reasonably could have found that Cascio's principal cause or motive in entering the contract was to obtain legal defense against a long and formidable prosecution in court based on a grand jury indictment which he erroneously considered to be inevitable. An error of fact proceeds either from ignorance of that which really exists or from a mistaken belief in the existence of that which has none. La.C.C. Art. 1821. The evidence justified a finding that Cascio was ignorant of the gaps in the F.B.I. tapes and a finding that he mistakenly believed evidence existed which undoubtedly would lead to an indictment and lengthy court proceedings. Cascio's mistaken belief was reasonable in view of what he had been told by his attorney, an experienced criminal lawyer, following Wells' conference with the U.S. attorney and participation in the preliminary examination. The jury reasonably could have determined that Cascio would not have entered the attorney-client contract or executed the $15,000 promissory note had he been aware of the true facts. Wells was apprised of Cascio's principal cause or motive of entering the attorney-client contract because Cascio's conception of the case was based almost entirely upon information and advice provided by Wells. Furthermore, the jury reasonably could have found that information which would have destroyed Cascio's erroneous conception, i.e., facts relating to the true quality of the government's evidence, had been withheld by Wells, thus invalidating the contract.

The Evidence Justifies a Finding that O'Neal was Not A Holder in Due Course
The verdict of the jury necessarily implied a finding that O'Neal was not a holder in due course. Otherwise, he would have been entitled to enforce payment of the promissory note free from a defense based on the invalidity of the contract between Cascio and Wells. La.R.S. 7:57.
*543 A holder in due course is defined by La.R.S. 7:52 as follows:
§ 52. Holder in due course; conditions under which taken
"A holder in due course is a holder who has taken the instrument under the following conditions:
(1) That it is complete and regular upon its face;
(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
(3) That he took it in good faith and for value;
(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."
Since the note was regular upon its face and was negotiated before it was overdue, the jury must have found that O'Neal took it from Wells in bad faith, without giving value, or with notice of an infirmity in the instrument or defect in Wells' title.
We described earlier the somewhat suspicious circumstances under which Cascio received notice of O'Neal's purchase of the note shortly after informing Wells the criminal charge would be dropped. O'Neal had been a close friend of Wells since boyhood, as well as his client and business associate for many years. Evidence was introduced from which the jury reasonably could have determined that on a previous occasion O'Neal and Wells had perpetrated a subterfuge by having Wells purchase property at a sheriff's sale in his name for O'Neal in order to defeat the rights of O'Neal's former wife and judgment creditor. They testified that in the transaction at issue here Wells had been given a $15,000 credit on a pre-existing debt owed O'Neal as consideration for negotiating the promissory note to O'Neal, but there was no written evidence of the credit. According to Wells and O'Neal, the pre-existing indebtedness resulted from Wells' purchase of an interest in property from O'Neal on credit. The parties introduced sharply conflicting testimony from expert witnesses relating to the value of this property. However, if the jury accepted the value assigned by Cascio's expert, they would have been justified in doubting that Wells, who was familiar with land values, would have agreed to pay as much for an undivided interest in the property as it contended. In turn, the jury reasonably could have questioned whether Wells actually owed a pre-existing debt to O'Neal and, therefore, whether O'Neal actually gave Wells anything of value for the note. Wells and O'Neal also introduced expert testimony as to the value of the land, and more than one reasonable inference could have been drawn from all the evidence. However, we find that the jury reasonably could have inferred that the transfer of the note by Wells to O'Neal was made after Wells knew the criminal charge would be dropped, because Wells anticipated Cascio would not pay the balance of his fee, and that no real consideration passed between O'Neal and Wells. Accordingly, the jury's determination that O'Neal lacked one or more of the requisites for being a holder in due course was a reasonable factual finding.
In conclusion, there being sufficient evidence to support the finding of the jury that O'Neal was not a holder in due course and that the contract and note were invalid, the jury verdict is affirmed. Although the trial court has much discretion in taxing court costs, it does not appear equitable to assess any of the costs to Cascio. Therefore, the judgment below will be amended in this respect only.
The judgment of the trial court is amended to tax all costs of these proceedings against O'Neal and, as amended, is affirmed.
Amended and affirmed.
*544 HALL, J., concurs with written reasons.
BOLIN, J., concurs for the reasons assigned by HALL, J.
HALL, Judge (concurring).
I am in agreement with the result reached on all issues in the foregoing opinion and agree with the reasons expressed on all issues except those expressed relating to the allowance of a trial by jury. On that issue, it is my opinion the request for a jury trial was timely under the provisions of LSA-C.C.P. Art. 1732. The pleadings relating to the third party demand, by definition "incidental" to the principal demand and issues raised therein, are pleadings directed to the issue triable of right by a jury. The request for a jury trial was made at the same time as the filing of a supplemental third party petition and prior to the filing of an answer to the third party petition or the supplemental third party petition. The request was made within ten days after service of the last pleading directed to the issue triable by jury and was, therefore, timely. Although not directly in point, this conclusion is supported by the rationale of Barberito v. Green, 275 So.2d 407 (La.1973); Plaisance v. Collins, 234 So.2d 436 (La.App.1st Cir. 1970), and Arrington v. McCarty, 136 So.2d 119 (La.App.3d Cir. 1962).
Concluding that the demand for a jury trial was timely made, the discussion in the foregoing opinion concerning the discretion of the trial judge to grant a jury trial untimely requested after the expiration of the delay provided in LSA-C.C.P. Art. 1732 is unnecessary. I express no opinion on that question, it being unnecessary to a decision of the case and it not being raised or briefed by any of the parties litigant.
I respectfully concur.
BOLIN, J., concurs for the reasons expressed in the concurring opinion of HALL, J.