428 So.2d 1314 (1983)
James R. CARPENTER, Plaintiff-Appellant,
v.
Donald Lee WILLIAMS, et ux., Defendants-Appellees.
No. 82-627.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1983.
Rehearing Denied May 13, 1983.
*1315 Book & Thibodeaux, Fred A. Book, Jr., Lake Charles, Bean & Parker, Ernest Parker, Lafayette, for plaintiff-appellant.
Henderson & Hanemann, Charles Hanemann, Houma, for defendants-appellees.
Before FORET, CUTRER and KNOLL, JJ.
CUTRER, Judge.
This suit by James Carpenter involves a demand for the specific performance of a real estate buy-sell agreement and a reconventional demand for the return of a deposit, brought by Mr. and Mrs. Donald Lee Williams. The trial court, after a hearing on the merits, dismissed Carpenter's demand for specific performance and awarded the Williamses (plaintiffs in reconvention) the return of their deposit plus interest. Carpenter appeals. We affirm.

FACTS
In 1979, Williams was employed by Transco, a company involved in the oil exploration industry, as superintendent of Transco's base of operation in Cameron, Louisiana. Williams' employment required that he be in Cameron five days a week. Williams was living in Lafayette, Louisiana where he owned his home. Each work day he had to commute between Lafayette and Cameron, a distance of approximately 110 miles each way.
Williams had no objection to making the drive each day. He owned his home in Lafayette and was satisfied with the arrangement. In September 1979, however, he received orders from Transco that he must move closer to Cameron. Williams stated that if he had not obeyed the order he would have lost the position he had and would have been transferred to offshore work.
In order to comply with Transco's directive, Williams contacted Donna Fuselier, a real estate agent in Lake Charles, in an attempt to find suitable housing. The agent put Williams in touch with Carpenter, a builder in Lake Charles. Williams stated that he and his wife met with Carpenter at Carpenter's home. Williams stated that they told Carpenter of their reason for having to leave Lafayette and move to Lake Charles. Also, they discussed the possibility of Carpenter building a home for them along the same plan as that of their Lafayette home. Carpenter's estimate for this construction was higher than Williams expected and this proposal did not materialize. Williams was shown and became interested in a house that Carpenter had built for sale.
On September 28, 1979, Williams met with his real estate agent and signed an offer to purchase the house. Included in the offer was the following language:

"This offer is contingent upon buyer [defendant] obtaining a conventional loan for $58,000. Offer is also contingent upon seller [plaintiff] painting outside of home and close of sale for buyer's [Williams'] home." (Emphasis ours.) *1316 Carpenter accepted the offer, with inserted conditions, on the same day.
Two of the listed conditions were fulfilled. Williams obtained a loan commitment from a bank in Lake Charles and Carpenter repainted the exterior of the house. The third condition, "close of sale for buyer's home," was never fulfilled.
Transco had a company policy of offering to purchase the homes of employees that were transferred. Williams began the procedure to secure Transco's offer. Two appraisers valued Williams' Lafayette home and Transco, through its agent, Texas Commerce Bank of Houston, offered an amount equal to the average of the two appraisals, $83,300.00.
After Williams received a loan commitment from the Lake Charles bank, Bill Bruha, Williams' superior at Transco, informed him that the order requiring him to move to Lake Charles had been rescinded. When Transco rescinded the order Williams notified the Texas Commerce Bank of such and declined the outstanding offer that the bank had made on behalf of Transco. Williams allowed the loan commitment from the Lake Charles bank to expire and he notified his real estate agent, Donna Fuselier, of the turn of events. Williams told her that, under the circumstances, he could not purchase the house from Carpenter.
Donna notified Carpenter of the situation and this suit followed. The trial judge found the agreement was unenforceable and stated in his reasons that the condition in the contract (that the sale was conditioned upon the sale of Williams' Lafayette home) was potestative and suspensive and not enforceable.
From the judgment Carpenter appeals seeking an enforcement of the contract on the ground that the condition was a mixed potestative condition and Williams must make a reasonable effort to sell his Lafayette home and purchase the Lake Charles residence.
Williams contends that, first, the condition is purely potestative and renders the contract unenforceable or, in the alternative, the contract was invalidated due to error for the failure of cause or motive.
The issue before us is whether the buy-sell agreement, under the circumstances presented, created an enforceable contract.
We have carefully examined the record and the legal principles involved and, while we agree with the conclusion that the trial judge reached, we do so for different reasons.

FAILURE OF CAUSE
We have concluded that the contract, under the unusual circumstances presented, was invalidated by the failure of cause or motive for the reasons set forth hereinafter:

"Errors may exist as to all circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself. La.C.C. Art. 1823. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made. La.C.C. Art. 1825. No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it. La.C.C. Art. 1826. ..."

O'Neal v. Cascio, 324 So.2d 539 (La.App. 2nd Cir.1975).
We examine the facts herein in order to ascertain the applicability of these principles.
Williams testified that his only reason for investigating buying a home in Lake Charles was to satisfy his employer's order *1317 that he live closer to Cameron.[1] Mr. and Mrs. Williams were content with their Lafayette home. However, rather than risk losing his job Williams undertook to comply with Transco's orders. This fact is supported by exhibits in the record which show Transco twice appraised, then bid on, Williams' Lafayette home. Transco has a policy of bidding on the homes of employees who are forced to relocate.
Williams testified that he and his wife met with Carpenter in his home and discussed duplicating the Lafayette residence in Lake Charles. The Williamses said at this meeting that they told Carpenter of their reason for having to move to Lake Charles. The testimony of Williams in this regard is as follows:
"Q. Who besides yourself and Mr. Carpenter were present?
"A. His wife.
"Q. How far was his home from the residence at 731 Esplanade?
"A. Approximately one block, maybe one and a half (1 ½) blocks.
"Q. Did you explain at that time to Mr. Carpenter the reason for which you were moving to Lake Charles?
"A. Positively.
"Q. Did you give him the explanation that you gave in Court a few minutes ago?
"A. Yes.
"Q. Did you inform Mr. Carpenter that you had a house in Lafayette?
"A. Yes.
"Q. Did you inform Mr. Carpenter what, if anything, you would have to do with your house in Lafayette in order to move to Lake Charles?
"A. I discussed the whole thing with him. I was being transferred, I had to buy a house in Lake Charles; also, I had to sell my house in Lafayette, and that was the only reason I had ever come to Lake Charles was because my job required me to."
* * * * * *
"Q. Did you explain to Mr. Carpenter when you met with him what plans you had for getting rid of your house in Lafayette?
"A. Right.
"Q. What did you tell him?
"A. I told him Transco, my employer, would make an offer to buy my house."
Carpenter recalls no such discussion.
Williams states that only after it was clear that Carpenter could not recreate their Lafayette home in Lake Charles that negotiations began for the house Carpenter had built as a speculative venture. Williams insists that his only reason for buying the Lake Charles home was to comply with his employer's order and that Carpenter was aware of Transco's orders being the impetus for Williams' move.
Williams made good faith efforts to fulfill the buy-sell agreement as long as his motive for entering the agreement was intact. Williams sought Transco's bid on his Lafayette home. The Williamses secured financing for Carpenter's house through a bank in Lake Charles. It was only after Williams' supervisor at Transco informed him that the order to move had been rescinded that he decided not to buy Carpenter's house. Williams continued to live in Lafayette and commute to work in Cameron after the order was rescinded.
The trial judge did not decide the issue of failure of cause. We therefore do not have the trial judge's evaluation of the evidence on this point. However, this court has the authority to review both law and fact and when the entire record is before us we are mandated to render judgment. LSA-C.C.P. art. 2164. See, Gonzales v. Zerox Corporation, 320 So.2d 163 (La.1975), and its progeny. We are convinced that Carpenter knew of the principal cause of Williams having to move and purchase a home in Lake Charles.
*1318 Marcello v. Bussiere, 284 So.2d 892 (La. 1973), involved the question of whether the sale of a bar-lounge business and a related lease should be rescinded because of a vice of consent. Marcello held a lease to what had been a going concern. The Bussieres wanted to invest in a business. After some negotiations a verbal lease of the premises was entered into and the Bussieres bought the business and equipment from Marcello. Marcello had told Bussiere the lounge was closed for repairs. In fact, the lounge was closed at the time of the sale because it had lost its liquor license. Bussiere paid the utilities and insurance on the premises and undertook extensive renovations. When Bussiere was informed by the local authorities that he could not obtain a liquor license for the premises he refused to pay rent for subsequent months and stopped renovations.
The Supreme Court stated:
"Error in the determining motive, or principal cause, vitiates consent and invalidates a contract. ....
* * * * * *

"[T]he determining motive for the present contracts was to secure a going bar-lounge business for their [Bussiere's] continued operation. An alcoholic beverage license was of course essential for operation of the business. This determining motive, in our opinion, was either known to the seller or, from the circumstances, should have been known to him.

* * * * * *

"Since the purchasers received no going business and could not secure a license to operate, we conclude that there was an error in the principal cause of the contract.... The contracts must be rescinded. See LSA-C.C. Arts. 1821, 1822, 1846; Stack v. Irwin, supra [167 So.2d 363 (La.1969)]; Boehmer Sales Agency v. Russo, La.App. 99 So.2d 475 (1958); 19 La.L.Rev. 196, 199-200."

Similar results have been reached in cases involving misunderstandings between a seller and a purchaser as to the zoning classification of a piece of property, Ortego v. Lebert, 406 So.2d 253 (La.App. 3rd Cir. 1981); and the requirement of governmental approval of certain uses of the land which was the object of a sale; Walker v. Don Coleman Const. Co., Inc., 338 So.2d 1183 (La.App. 2nd Cir.1976). In O'Neal v. Cascio, supra, the court rescinded a promissory note given by a client to an attorney in contemplation of legal fees to arise in the defense of an upcoming indictment. The indictment was never issued. The court stated the jury reasonably could have found that Cascio's principal cause or motive in entering the contract was to obtain legal defense. Further Cascio would not have entered the attorney-client contract or executed the note had he been aware that an indictment was not forthcoming.
In these cases the parties entered a contract assuming certain facts or conditions to exist. When the assumed fact or condition was found not to exist or did not come into existence even through the act of third parties (Transco in this case), the contracts have been rescinded.
With these cases in mind, we find that the principal, and only, cause or motive Williams had for entering into the buy-sell agreement with Carpenter was to comply with Transco's orders. We further find that Carpenter was aware of this fact. Thus, when Transco rescinded its order to Williams the cause or motive for entering the contract ceased to exist or failed and the contract became unenforceable. We shall affirm the judgment of the trial court.
For the reasons above assigned, the judgment of the trial court is affirmed. The costs are to be paid by James R. Carpenter, plaintiff-appellant.
AFFIRMED.
NOTES
[1] Plaintiff's attorney stipulated that, if called, Mrs. Williams' testimony on this point would be substantially the same as Mr. Williams'.