463 So.2d 89 (1985)
Sharon HOFFMAN, Plaintiff-Appellee,
v.
CRAFTWORLD INTERNATIONAL, INC., Defendant-Appellant.
No. 84-115.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1985.
*90 Gold, Little, Simon, Weems & Bruser, Robert G. Nida, Alexandria, for defendant-appellant.
Laird & Buck, James M. Buck, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and KING, JJ.
KING, Judge.
Plaintiff, Sharon Hoffman, instituted this suit against defendant, Craftworld International, Inc., seeking the dissolution of a written contract entered into by the parties and the return of all monies paid by plaintiff to Craftworld pursuant to the contract. In addition, plaintiff sought attorney's fees and costs of the proceeding. After hearing the evidence, the trial court found that Craftworld had breached the contract and rendered judgment dissolving the contract and rescinding the sale of machines and supplies and ordering Craftworld to refund the purchase price subject to a credit for profits earned. Craftworld has suspensively appealed. We affirm.

FACTS
In July 1982, plaintiff, in response to an advertisement in the Alexandria Daily Town Talk, began to negotiate with Small Business Development Company, a division of Craftworld International, Inc., to purchase an engraved sign and rubber stamp business for a purchase price of $7,995.00. The advertisement plaintiff had responded to stated that there was no selling involved and that the company would provide all the training needed.
Plaintiff met with a representative of Craftworld who demonstrated the machines to make the products and showed her samples of the finished products consisting of rubber stamps and engraved plastic signs. According to plaintiff, the representative stated that, in return for her initial investment of $7,995.00, Craftworld would sell her machines to make the products, would sell her supplies, would train her to operate and maintain the stamp and sign machines, and would secure for her twenty retail sales outlets where she could sell her products. A written contract was signed on July 29, 1982, and provided in part:
"Training: As additional consideration for the purchase price, seller will provide on-the-site training, relating to equipment, operation, layout, and forming procedures.
"Retail Sales Outlets: As further consideration Seller will secure twenty (20) original sales outlets, during the period of on-the-site training. Upon acceptance of said sales outlets, the purchaser assumes all responsibility for maintaining and servicing said outlets."
*91 In September 1982, Craftworld shipped to plaintiff the machinery and supplies listed in the contract and also sent a representative, Mr. Jeffrey Wilson, to train plaintiff in the making of rubber stamps and engraved signs. During this training period, Mr. Wilson also had the duty of securing twenty retail sales outlets for the sale of the products to be made by the plaintiff. At the conclusion of the training period, Mr. Wilson presented plaintiff a list of twenty retail sales outlets in the geographic area which he claimed he had secured for the sale of plaintiff's products.
Upon completion of the training period, Mr. Wilson departed and plaintiff prepared to do business. Two weeks went by and plaintiff had not been contacted by any of the stores, listed as retail sales outlets, to place orders for plaintiff's products so she began to contact them. At that time she found that many of them did not have price lists, brochures, or displays and that some had never agreed to be sales outlets for her products. Further, plaintiff found other outlets had only agreed to display the rubber stamps and refused to be an outlet for her engraved sign business.
Plaintiff notified Craftworld of this situation and demanded her money back. Craftworld then offered to return and establish other retail sales outlets for plaintiff but she refused because she felt that too many of the large office supply and stationery stores in her geographic area had already refused to serve as outlets and therefore the business could not succeed. This suit followed.
Craftworld alleges that the trial court erred in dissolving the contract.
At the trial Mr. Wilson testified that he had personally contacted all of the twenty businesses that had agreed to serve as a retail sales outlet for plaintiff's products. However, various witnesses involved in those businesses testified that they had never agreed to be retail sales outlets for plaintiff's products. These witnesses included Mr. Robert Cowart, the owner of Cowart's Printers; Mr. Thomas Spangler of Louisiana Offset Printers; Mr. William Ozier of the Jones Office Equipment Company, Mr. Calvin Price of Jordan Printers, and Mr. Beck of the Baptist Book Store.
The trial judge, in his reasons for judgment, stated in part:
"However, the Court finds that Small Business Development Company or Craftworld International, Inc. certainly, without any doubt whatsoever in this Court's mind, breached the terms of the contract that they entered into with Mrs. Hoffman. The principal motive and cause for entering the contract was the fact that the defendant had guaranteed by the specific terms of the contract that she would have a minimum of twenty original sales outlets for the product. The truth of the matter is that she only had a very few, maybe five or six total, in which the outlet would handle all of the products that the company lead Mrs. Hoffman to believe that she could sell."
Where there is conflicting testimony the reasonable evaluation of credibility made by the trial court should not be disturbed upon appellate review unless manifestly erroneous. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La. 1973); Ortego v. Lebert, 406 So.2d 253 (La. App. 3rd Cir.1981).
Craftworld appeals from the adverse judgment in the trial court seeking enforcement of the agreement, on the ground that the contract contains a nonrescission clause, and also urging that the circumstances do not justify a dissolution of the contract.
The issue presented by this appeal is whether the trial judge was correct in concluding that the contract should be dissolved because of error in the principal cause or motive for making the contract which would invalidate plaintiff's consent to the contract.
In Savoie v. Bills, 317 So.2d 249 (La.App. 3rd Cir.1975), our court stated:
"LSA-C.C. Article 1819 provides that there is no contract where consent thereto has been produced by error. Article *92 1820 provides that error is of two kinds, error of fact and error law. Article 1821 states: `That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.' Article 1823 provides in part that error of fact invalidates a contract where the error `was a principal cause for making the contract.' Article 1826 states that error (of fact) as to the principal cause of the agreement does not invalidate a contract unless the other party knew or should have known it was the principal cause." Savoie v. Bills, 317 So.2d 249, 255 (La.App. 3rd Cir.1975).
Jurisprudence under these code articles has established the rule that a contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principal cause. Marcello v. Bussiere, 284 So.2d 892 (La.1973); Sylvester v. Town of Ville Platte, 218 La. 419, 49 So.2d 746 (1950); Carpenter v. Williams, 428 So.2d 1314 (La.App. 3rd Cir.1983); Ortego v. Lebert, 406 So.2d 253 (La.App. 3rd Cir.1981); O'Neal v. Cascio, 324 So.2d 539 (La.App. 2nd Cir.1975); North Development Company, Inc. v. McClure, 276 So.2d 395 (La. App. 2nd Cir.1973); Jefferson Truck Equipment Company, Inc. v. Guarisco Motor Company, Inc., 250 So.2d 211 (La. App. 1st Cir.1971) and the authorities cited therein.
We examine the facts herein in order to determine the applicability of these principles of law.
The record reflects that plaintiff was seeking to invest funds in a small operating business to supplement her income from the beauty shop which she ran during the day. She testified that the twenty retail sales outlets for the sale of her products, to be established by Craftworld, were very important to her and that it would be impossible for her to run the business without them. She further testified that securing the twenty sales outlets was a motive for her entering into the contract. Plaintiff stated Craftworld made no guarantees or representation of the amount of money she could expect to make and that she was not influenced to enter into the contract by any representations as to the amount of income she could expect to achieve with the business.
It is obvious from the record that plaintiff's determining motive for the contract was to secure a profitable business and that the twenty retail sales outlets for the distribution and sale of her products were essential for profitable operation of the business. These outlets were the principal reason why plaintiff felt that this business could succeed as a supplement to her income while operating her beauty shop during the day, and her principal motive for entering into the contract. This principal motive, in our opinion, was either known to the seller or, from the circumstances, should have been known to them.
The trial court found that since plaintiff did not receive the twenty retail sales outlets specified in the contract that there was error in the principal cause of the contract invalidating plaintiff's consent to the contract. We agree. Craftworld contends that the plaintiff should not be allowed to rescind the contract because of the nonrescission agreement and that it should be given an opportunity to perform the contract. As we have found there was no contract, since there was an error in the principal cause of the contract invalidating plaintiff's consent to the contract, we do not reach these issues.
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are to be paid by defendant-appellant.
AFFIRMED.