DOMENGEAUX, Judge.
Jay M. Cole was injured when a fragment of steel from a screw extractor struck him in the eye. He brought suit against Belknap, Inc., the distributor of the extractor, Vermont American Corporation, the manufacturer of the extractor, The Home Insurance Company, the liability insurer of Belknap and Vermont, and the City of West Lake. After a trial on the merits, the district judge held in favor of the plaintiff and against the defendant distributor, manufacturer, and their insurer. He also rendered judgement in favor of the city of West Lake, rejecting plaintiffs demands against it. The district judge further dismissed all third party demands.
On July 23,1984, Jay M. Cole reported to the city of West Lake to perform community service work required of him in connection with a DWI conviction. Mr. Cole was not a regular employee of the city, nor was he to be paid for his services. Mr. Cole was assigned to a maintenance crew which proceeded to repair leaking pipes in the city’s water system. After completing repairs at one location, the crew proceeded to another location where a leak had occurred. Using a backhoe, a member of the crew dug down to the leaking pipe. Because the leaking water was filling the hole, Mr. Cole and another member of the crew took a gasoline powered pump from the maintenance truck and began pumping water from the hole. Upon investigation of the leak, two members of the crew discovered that it resulted from a rusted pipe. The three quarter inch rusted pipe formed a tee connection with a larger two inch main line. In trying to remove the rusted pipe from the two inch line, the pipe broke, making it difficult to unscrew the broken off piece. In order to complete removal of the broken piece, Charles Baker, a city employee, used a “screw extractor,” also called an “easy out”, and a wrench to attempt the removal. In trying to seat the screw extractor into the broken pipe, Mr. Baker hit it with a ball peen hammer. This task was made more difficult because water continued to run from the pipe. Mr. Baker was unable to seat the extractor after striking a number of blows and gave up, allowing Clyde Malb-rough to attempt the operation. Mr. Malb-rough climbed into the hole and attempted to seat the extractor by hammering it into the pipe. It took him a couple of blows before he successfully seated the extractor and was able to remove the broken pipe. However, during one of these attempts, a hammer blow dislowed a metal fragment from the extractor, which struck Mr. Cole in his right eye. At the time, Mr. Cole was standing approximately fifteen feet away, on a small mound of dirt, watching the removal of the pipe.
After Mr. Cole was injured, another employee of the city, and member of the crew, took Mr. Cole to see Dr. Gary F. Roberts of the Medical Arts Group in West Lake. Dr. Roberts examined Mr. Cole and had a number of x-rays taken. Dr. Roberts found that the metal fragment had penetrated *930 Mr. Cole’s right eye lid and had lacerated the eyeball, but was not embedded in it. He then removed the metal fragment from Mr. Cole’s eye, and referred him to the Eye Clinic for further examination.
Dr. Larry Stewart, an ophthalmologist with the Eye Clinic, examined Mr. Cole approximately forty-five minutes after Dr. Roberts had removed the metal fragment. Dr. Stewart discovered that the fragment had penetrated Mr. Cole’s eyeball, that blood had entered the eye, and he determined that surgery was required to close the injury. Mr. Cole was subsequently taken to the hospital, where the surgery to close the injury was performed. Mr. Cole was discharged from the hospital on July 28, 1984, after a five day stay. The doctor released him for bed rest and recommended a number of prescribed medications. His overall impression at that time was that Mr. Cole was doing extremely well.
Mr. Cole continued to see Dr. Stewart until July 1, 1985. Over this period, Dr. Stewart monitored Mr. Cole's eye, noting its visual acuity, and adjusting his medication as needed. Dr. Stewart indicated that, at this time, Mr. Cole’s visual acuity in his right eye was 20/40. Dr. Stewart also placed Mr. Cole on artificial tears because of dryness caused by damage to his eye. He indicated that Mr. Cole would probably need this for the remainder of his life. Dr. Stewart also indicated that as a result of his injury, Mr. Cole has a greater chance of developing glaucoma than had he not been injured. He therefore suggested that Mr. Cole visit an ophthomologist at least once a year for the rest of his life.
In rendering judgement, the district court awarded Mr. Cole $35,000.00 in general damages plus $7,090.87 in stipulated special damages, for a total of $42,090.87. He, also, rejected the demands of Mr. Cole against the city of West Lake and dismissed all third party demands.
On appeal Mr. Cole makes the following assignments of error: (1) the trial court’s award of $35,000.00 to plaintiff was in error as it did not adequately compensate plaintiff for his injuries; (2) the trial court erred in failing to award the plaintiff the future medical expenses proven at trial; (3) the trial court erred in failing to award attorney’s fees; (4) the trial court erred in dismissing plaintiff’s claims against the city of West Lake.
Vermont American, Belknap, and Home Insurance answered the appeal and assigned as error the trial court’s dismissal of their claims for indemnity or contribution brought against the city of West Lake.
In his first assignment of error, Mr. Cole argues that the trial judge’s award of $35,000 in general damages is inadequate.
Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after concluding that the record supports a finding that the lower court abused its much discretion can the appellate court disturb the award, and only then to the extent of raising or lowering it to the lowest or highest point which is reasonably within the trial court’s discretion. Coco v. Winston Industries, 341 So.2d 332 (La.1976). The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion. Coco v. Winston Industries, Supra. Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case. Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
Mr. Cole sites Martin v. Gulf South Beverages, Inc., 454 So.2d 250 (La.App. 5th Cir.1984), in arguing that his award is inadequate. The facts in that case and the injuries resulting to the plaintiff therein are sufficiently different from those before us that it is of no help to us in deciding whether the trial judge in this case abused his much discretion.
A review of the record here shows that the injury to Mr. Cole was indeed painful. It was necessary that he take pain medication in order to control that pain. He also was required to stay in the hospital for five days following his surgery. His visual acuity in his right eye was significantly *931 diminished after the accident and surgery, primarily from medication causing dilation of the pupils, but was only slightly diminished when Dr. Stewart last saw him on July 1, 1985. In fact, Dr. Stewart testified that when considering the visual acuity of both of Mr. Cole’s eyes when used together, he had essentially 20/20 vision.
Dr. Stewart also indicated that Mr. Cole’s chances of developing glaucoma had increased as a result of the accident. However, he also indicated that if Mr. Cole followed his advice and had yearly eye examinations, the potential danger to the eye from developing glaucoma would be greatly reduced.
It was also shown that Mr. Cole would have to use artificial eye lubricant for the remainder of his life due to some damage to the tearducts in his right eye.
On the whole, however, Dr. Stewart was satisfied with Mr. Cole’s recovery, and felt that he was doing well.
Based on these facts, we cannot conclude that the trial judge abused his much discretion in awarding Mr. Cole $35,000 for his injuries. This amount does not fall below the lowest award reasonably within the trial judge’s discretion.
In his second assignment of error, Mr. Cole argues that the district court incorrectly failed to award him the future medical expenses proven at trial.
In his oral reasons for judgment, the district judge stated: “I have fixed the amount of the award in general damages in the amount of $35,000.00, and the special damages I think were stipulated to in this particular instance.”
General damages are those which may not be fixed with any degree of pecuniary exactitude, but which involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life-style which cannot really be measured definitively in terms of money. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974).
Special damages are those which can be fixed to a pecuniary certitude. Lauer v. City of Kenner, 445 So.2d 1308 (La.App. 5th Cir.1984).
The future medical expenses which Mr. Cole seeks are for the cost of yearly eye examinations he will be required to undergo due to the increase in the possibility of his developing glaucoma, and for the cost of artificial eye lubricant he will need for the remainder of his life. These expenses are special damages under the definitions given above. Lauer v. City of Kenner, supra; Anderson v. Welding Testing Laboratory, supra.
A review of the record shows that the cost of future eye examinations and for artifical eye lubricants were not included in the stipulated special damages. Also we cannot assume that these expenses were included in the trial judge’s award of general damages. Although he mentined Mr. Cole’s need for yearly eye examinations and artificial eye lubricant in addressing the award for general damages, it is clear from the context of the remarks that these were only factors he took into account in awarding general damages. He made no special finding with regard to these expenses. Therefore, we agree that Mr. Cole is entitled to an award for the cost of eye lubricant and for eye examinations he will need in the future. Since the trial court did not make such an award, we must do so.
The record indicates that the cost of an annual eye examination is $55.00. Although there is evidence of the increase of this cost over the last fourteen years, there is not sufficient evidence for us to speculate what future increases will be. Nor was evidence of the discount rate to present value offered. Therefore, we will take $55.00 as being the cost for all future eye examinations. Mr. Cole’s age as of the date of trial was 24 years and his life expectancy, according to the table set for in La.R.S. 47:2405, is 39.49 years. Therefore, the total expected cost of future eye examinations will be $2,171.95.
With regard to eye lubricant, Mr. Cole testified that a bottle that lasts approximately three weeks costs about $4.50. *932 This equals — $1.50 per week, which comes to $78.00 per year. Given Mr. Cole’s life expectancy of 39.49 years, his lifetime cost for eye lubricant can be expected to be $3,080.22. Again, evidence of inflation and the appropriate discount rate to present value were not offered.
Therefore, the total cost of proven future medical expenses which we award to Mr. Cole is $5,252.17.
In his third assignment of error, Mr. Cole argues that he is entitled to attorney’s fees under article 2545 of the Civil Code.
Article 2545 declares that a seller who has knowledge of a defect in the thing he sells and omits to declare it is answerable to the buyer for attorney’s fees. This remedy is statutorily provided for in favor of the purchaser of a defective thing. Since Mr. Cole is not in the class of persons protected under Article 2545, he is not entitled to recover attorney’s fees.
In his final assignment of error, Mr. Cole argues that the trial court incorrectly failed to hold the city of West Lake liable for Mr. Cole’s injuries.
The district judge’s oral reasons for judgment indicated that he did not consider the negligence of the City because he believed he was precluded from doing so when he was basing the liability of the manufacturer and distributor on a strict products liability theory. This is not correct.
Civil Code article 2324 states in pertinent part “Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido...” Civil Code article 1804 declares that “Among solidary obligors, each is liable for his virile portion. ... If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.” We also note that Code of Civil Procedure article 1917 provides that the district judge in a non-jury case for the recovery of damages for injury shall make specific findings of the matters referred to in Paragraph C of Code of Civil Procedure article 1812. The matters referred to in Paragraph C of article 1812 which are pertinent here state:
(2) If appropriate, whether another person, whether party or not, other than the person suffering injury, death, or loss, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
Each of these articles speak of the relative apportionment of fault. Fault in Louisiana is not limited to negligence or intentional acts under Civil Code article 2315, but also includes strict products liability. See Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978), note 2 at page 929. The trial judge erred therefore in not considering the negligence of the City of West Lake.
17] Since the trial judge failed to make an evaluation of the negligence of the City, we shall make that factual determination since the entire factual record is before us. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); Carpenter v. Williams, 428 So.2d 1314 (La.App. 3rd Cir.1983).
In Chappuis v. Sears Roebuck & Co., supra, the court addressed similar allegations. In Chappuis, a metal fragment chipped from a hammer plaintiff was using and struck him in the eye. Sears, as distributor of the hammer, was held strictly liable for failing to adequately warn users that once a hammer is chipped it should be discarded, since, once chiped, the hammer became unsafe. Sears sought indemnity from the president of the company employing plaintiff, alleging that he knew or should have known of the defective nature of the hammer given to plaintiff, and was negligent in failing to inspect the hammer, in failing to warn plaintiff about it’s dangers, and in failing to supply plaintiff with goggles or to instruct him about safe methods for the hammer’s use. In rejecting these allegations, the court stated: “We conclude, however, from the record, that [the president of the company] did not know of the danger and had no duty to know, absent a proper warning on the handle of the hammer.” 358 So.2d at 931.
*933 We reach the same conclusion here, given the facts before us. The City is alleged to have been negligent in failing to give adequate safety training to its employees, in failing to provide proper training in use of hand tools, in failing to provide goggles, in failing to adequately supervise Mr. Cole, and in failing to inspect the screw extractor. We cannot conclude that, absent a warning informing the City of the screw extractor’s potential for chipping, that the City breached a duty to provide a safe environment to its employees. Absent the knowledge concerning the extractor’s tendency to chip, the City had no knowledgable basis upon which to inform its employees with respect to inspection of the extractor, the need to wear goggles, or other safety techniques in using the extractor.
Much has been made of the City’s failure to turn off the water when the screw extractor was being used. We conclude that this conduct did not breach a duty owed to Mr. Cole, given the absence of a warning regarding the extractors unsafe characteristics. Without the knowledge that the warning would provide, the City could not know that its practice of using the extractor with the water still on was potentially dangerous. In fact, the testimony of Mr. Larry Bonvillian, who was recognized as an expert plumber with extensive experience in the use of screw extractors, indicated that it was necessary to strike the extractor with the hammer to set it and that it was not unusual to set the extractor with the water still running. Given the knowledge of the City at the time, the practice of setting the screw extractor with the water running must be considered to be within the normal use of the extractor.
For these reasons, we conclude that the city of West Lake did not breach any duty owed to Mr. Cole regarding use of the screw extractor, absent a proper warning concerning the dangers related to the extractor’s use.
Since we conclude that the city of West Lake is not liable for the injuries Mr. Cole sustained, we do not reach the third party demands for indemnity or contribution made by Vermont-American, Belknap, Inc, or The Home Insurance Co.
For the above and foregoing reasons, the district court judgment is amended to award Jay M. Cole the additional sum of $5,252.17 for proven future medical expenses against Belknap, Inc., Vermont-American Corp., and The Home Insurance Co., in solido. Otherwise the judgment of the district court is affirmed.
Costs of this appeal are assessed against Belknap, Inc., Vermont-American Corp., and The Home Insurance Co.
AFFIRMED AS AMENDED.