Dear Mayor Smith:
You recently requested that this Office provide an opinion on matters related to zoning in your area. In your request, you present a hypothetical scenario to illustrate several zoning questions that you anticipate might arise in Zachary in the future. This hypothetical scenario has a developer requesting a zoning reclassification based on a series of specific development plans presented to the City Council ("the Council"). Once the reclassification is approved by the Council, the developer deviates from the submitted plans, constructing something that is not what was envisioned by or approved by the Council. In general, your request asks what recourse the City Council may have against a developer under those circumstances. Specifically, the request that you submitted raises the following questions:
 (1) Can reclassification of a zoned area be made conditional upon the requirement that the requester of the reclassification adhere to plans submitted to the City Council in order to obtain the reclassification?
 (2) Can the City Council adopt an ordinance that requires reclassification requesters to adhere to submitted plans lest the reclassification lapse back to the original zoning classification upon failure to comply with the submitted plans?
 (3) Can the City Council adopt an ordinance that would require the completion of projects within a certain amount of time?
 (4) More specifically to the hypothetical scenario presented in your request, if there is no conditional language in the reclassification ruling by the City Council and a reclassification was issued before the City Council adopts one of the ordinances noted above, can a *Page 2 
reclassification be revoked for the failure of the requester to adhere to the plans submitted to secure the reclassification?
Each of the above questions is answered, in the order in which they are presented. However, first a brief review of the general tenets of zoning law is warranted.
As you know, zoning is the common practice of controlling urban planning. This is accomplished through the classification of certain areas according to their uses or intended uses and is primarily employed to ensure that nuisances and nonconforming uses of land occur only where their impact on the area as a whole can be minimized. Wright and Gitelman have characterized the validity of zoning thus:
 The validity of zoning is predicated on the police power — the power to regulate for the advancement and protection of the health, morals, safety or general welfare of the community. Whether a particular zoning regulation will be upheld depends generally on whether it represents a valid exercise of the police power.
Robert R. Wright and Morton Gitelman, Land Use, 4th ed., 180 (West 2000). Of particular relevance to your request, the United States Supreme Court has long held that zoning, as an exercise of a municipality's police power, is an appropriate means for protecting single-family dwellings from encroachments by commercial uses, industrial uses, and even multi-family dwellings. Village of Euclid, Ohio v. Ambler Realty Co.,272 U.S. 365, 47 S.Ct. 114 (1926).
As a primary matter in assessing the validity of any zoning ordinance, and subsequently any deviation therefrom, one must look to the enabling authority of the local government to ensure that the authority to create zoning plans for the locality exist and to ensure compliance with rules for creating deviations therefrom when creating variances. That being said, the Louisiana Supreme Court has stated that all zoning ordinances are afforded a presumption of validity and that the challenger has the burden of proving that the ordinances are invalid. Palermo Land Co.,Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482
(La. 1990). See also, Four States Realty Co., Inc. v. City ofBaton Rouge, 309 So.2d 659 (La. 1975). Beyond the enabling authority and the presumption of validity, some Louisiana courts have required that zoning ordinances that deal with special permits or exceptions to the general zoning rules, to be valid exercises of the police power, must set forth clear, "objective standards or guidelines, sufficient to inform the responsible public bodies and those applying for special permits as to their rights, privileges and powers under the ordinance." Fondren v.Morgan City, 220 So.2d 136, 137 (La.App. 1 Cir. 1969). Therefore, we recommend that any new ordinances enacted by the City of Zachary must *Page 3 
follow this general jurisprudential guideline for including clear and objective standards in any new ordinance intended to regulate the issuance of special permits or conditions as to zoning matters.
The City of Zachary is a Home Rule Charter city. Therefore, rather than looking to the general provisions of Title 33 of the Louisiana Revised Statutes on zoning, we must look to Zachary's Home Rule Charter and Code of Ordinances in order to understand the legal limitations on zoning within the City. La. Const. Art.VI, Sec. 6 (stating that legislation cannot affect the structure of powers and functions of a home rule governmental subdivision).
The Louisiana Constitution, Art. VI, Sec. 17, grants local governments considerable latitude in establishing, implementing, and enforcing zoning ordinances. The City of Zachary's ordinances regarding zoning authority are contained in Chapter 90 of the Zachary Code of Ordinances. It is under this constitutional and local authority that the Zachary Planning and Zoning Commission ("the Commission") is created. The Commission is granted the power to divide the City into lots, to assign use classifications to those lots, and to consider rezoning requests for existing lots. See Zach. Code Ord. §§ 90-19, 90-24, 90-26, 90-123, 90-150, 90-338-341. Because, in the most basic sense, authority exists within the municipal code to create and amend zoning within the City of Zachary, we now consider the questions above in light of that authority.
In the first question, you ask if a rezoning by the City can be conditioned upon a developer's adherence to plans submitted in order to secure said rezoning. The answer to this question is in the affirmative. See generally, Reeves v. North Shreve BaptistChurch, 163 So.2d 458 (La.App. 2 Cir. 1964). Rezoning, in general, must be accomplished pursuant to a need to protect the health, safety, and welfare of the public. Palermo, supra, at 492. Thus, any action to rezone City property must be reasonably tied to one of these goals. However, a considerable amount of deference is granted to local legislative bodies in their determination to make zoning changes. Id. Indeed, the Louisiana Supreme Court notes that "`after the fact' attempts at planning, or reclassifications, are often necessary to accommodate the changing needs of a community." Id. at 494. Rezoning can be made conditional, requiring the requester to meet with certain explicit criteria in order to maintain the reclassification of the area. Reeves, supra, at 463. Such a criterion could be that a developer requesting rezoning adhere to the plans that were submitted in order to gain the rezoning by the City. In order to ensure that such criteria are properly incorporated into a rezoning plan, we advise, pursuant to the example in Reeves,
that the conditions be attached to any approval of an application for rezoning.
In the second question, you ask if the City Council can adopt an ordinance that would cause the zoning reclassification to lapse back to its original zoning *Page 4 
classification if the applicant does not adhere to the plans that were submitted to secure the reclassification. The answer to this question is in the affirmative. It is well within the police power of the municipality to control its zoning ordinances.Village of Euclid, supra. Allowing a developer to continue to construct a structure that is not in accordance with the plans that the Council relied upon in making its decision to rezone the property is tantamount to rewarding the developer for not complying with the law. We note that the penalties for zoning ordinance violations provided for by Zach. Code Ord. § 90-371 are likely not sufficient to deter would-be violators if they are able to realize a substantial return on their investment. Thus, it is our opinion that the Council could pass such an ordinance that requires developers to either conform to the original plans under which the reclassification was approved, lest the reclassification reverts to the original zoning. In the event that there is such a reversion, the structure would constitute a zoning violation that must be removed or fined (or both). We would caution, however, that such an ordinance should only apply prospectively, as questions of the taking of private property may arise if it were to be applied retroactively. See generally, La. Atty. Gen. Op. No. 04-0047. Additionally, though the conditions upon which a reclassification may revert to its original status may have to be application-specific, based on the particular facts of each case, we recommend that the Council, should it decide to proceed with this course of action, adopt a general ordinance that grants the Commission the power to so condition reclassifications in order to avoid equal protection problems under the Fifth and Fourteenth Amendments to the United States Constitution of treating individual applicants differently without reference to a uniform, nondiscriminatory scheme.
In the third question, you ask if the City Council can adopt an ordinance that would require the completion of projects within a certain amount of time. Again, the answer to this question is in the affirmative. There is no law in Louisiana that would prohibit the adoption of such an ordinance. Additionally, as part of a comprehensive zoning plan, such an ordinance could reasonably be tied to the goals of protecting the public health, safety, and welfare by requiring that structures not sit partially completed (and presumably in a hazardous state) for long periods of time. See e.g., City of Stamford v. Stevenson, 829 A. 2d 26
(Conn.App. 2003) (stating that unfinished buildings often pose a safety threat to the community). However, it is our opinion that there is a better way to accomplish this goal than by adopting an ordinance. Again, turning to the Reeves case, in the approval of a rezoning application therein, the Metropolitan Shreveport Zoning Board of Appeals added a condition to the approval that required that the proposed structure be completed by a certain date. This case-by-case approach to setting deadlines for completion of a construction project provides a more flexible approach to conditional rezoning that would allow the City of Zachary to provide for varying project deadlines based on the overall scope of each individual project. Certainly, one could not expect that a multiple-family dwelling or industrial complex would be able to be completed in the same *Page 5 
timeframe as a single-family dwelling. Thus, we recommend that, although Zachary has the power to adopt an ordinance to provide for a set amount of time to complete a project, common sense and the jurisprudence lends support to the proposition that the implementation of deadlines should be considered on a flexible, case-by-case basis, as part of the application approval process rather than by a strict rule in the ordinances. See Reeves,supra, at 462. Additionally, instead of adopting an ordinance that sets a timeframe for the completion of projects, the Council might consider adopting an ordinance or amending the existing zoning ordinances to require that a construction schedule be submitted by developers as part of their application package. This approach would provide the Council with guidance as to the developer's expectations for the time needed to complete the project and would also provide an informed basis from which the Council could create the deadline condition in the application approval.
In your final question, you want to know if a zoning reclassification can be revoked, in the absence of one of the ordinances discussed above, if a developer fails to comply with the plans that were approved by the Council. As a primary matter, at least minimal penalties for such action on behalf of a developer already exist in the Zachary Code of Ordinances. The "Penalties" section of the Code applies to "[a]ny person or corporation . . . who shall build or alter any building in violation of any detailed statement or plan submitted andapproved" by the Council. Zach. Code Ord. § 90-371 (emphasis added). Thus, at a minimum, a developer who deviates from a plan submitted to and approved by the Council can be held in violation of the zoning ordinances of the City and treated accordingly under Zach. Code Ord. § 90-371 et seq. Although such penalties are available under the Code, we again take notice of the reality that these penalties are minimal when compared to the return on an investment made by a developer in most cases, thus reducing the penalties' value as a deterrent to zoning violations. However, unlike the scenario detailed above, wherein an ordinance is created that notifies would-be violators that the zoning reclassification will revert to its original classification upon failure to adhere to submitted plans, this scenario does not so notify the developer. This failure to notify the developer that failure to adhere to the plans will result in a reversion of the reclassification undermines the ability of the Council to simply revert the reclassification upon such failure. Such action would likely constitute a violation of the developer's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution as well as Article I, Secs. 2 and 4 of the Louisiana Constitution. In light of this, we undertake an analysis of conventional obligations law under the Louisiana Civil Code that we feel is applicable to scenarios such as the one outlined in the fourth question.
Under an obligations analysis, we view the developer's proposal in an application for rezoning as an offer and the subsequent approval of the application as the Council's acceptance of the offer. Conversely, this scenario would also work if *Page 6 
the conditions placed on the rezoning act as a counteroffer by the Council and acceptance of the conditions as acceptance by the developer. The same practical effects of the following discussion apply to either approach to the initial obligation. It should be borne in mind as we proceed through this analysis that the above discussed offer and acceptance, under La. C.C. 1927, constitutes the consent of the parties. It is this consent that is necessary for upholding the integrity of any obligation. Id.
First of all, we note that La. C.C. Art. 1759 requires that all obligations are governed by good faith. The good faith of a developer who submits one set of plans to secure a zoning reclassification and then constructs something other than what is detailed in the approved plans must certainly be called into question. So, as an initial matter, we would suggest that, should such a situation arise as has been posed by your hypothetical, where no ordinances are in place, attacking the good faith of the developer in order to cause the obligation to fall would be a good starting point. If the obligation falls, then the object of the obligation, the rezoning, would also fall, causing the zoning to revert to its original classification.
Another avenue under the law of obligations for causing the reclassification to revert to its original classification is by finding fraud under La. C.C. Art. 1953. According to La. C.C. Art. 1953, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Certainly, a developer submitting one set of plans in order to secure a zoning reclassification and then building something else would qualify as "a misrepresentation . . . of the truth." Not only would there be a misrepresentation, but the purpose of the misrepresentation would be to "obtain an unjust advantage." The unjust advantage would be the fact that the developer received the reclassification when he likely would not have received it had the actual plans been submitted for approval. Thus, considering the foregoing, the components of fraud as required by La. C.C. Art. 1953 are satisfied and because, according to La. C.C. Art. 1948, consent is vitiated by such fraud, it is clear that an obligation, the object of which is a change in a zoning classification, should fall due to the fraud described above. Notwithstanding the availability of the theory as a means of combating a developer's duplicitous conduct, it should be noted that fraud is easy to allege but hard to prove.
Under either of the two constructions of the initial obligation noted above, the Council's cause for the obligation remains the same. The Council's cause for accepting the offer or for counteroffering is the developer's adherence to the plans that were submitted in order to secure the rezoning. As with consent under La. C.C. Art. 1927, cause is another indispensable component of an obligation. La. C.C. Art. 1966. Generally, when there is a failure of cause, the Civil Code *Page 7 
provides for two options: damages to the injured party for detrimental reliance or specific performance. La. C.C. Art. 1967. Under this general approach, the City could bring an action for specific performance of the contract (i.e., the developer's conformance to the approved plans). Such an action, if prevailed upon, would accomplish the intended goals of the zoning reclassification by forcing the developer to adhere to the approved plans. Alternatively, there is some case law that suggests that the failure of cause can lead to the failure of the entire obligation. Viterbo v. Friedlander, 120 U.S. 707,7 S.Ct. 962 (1887); Carpenter v. Williams, 428 So.2d 1314
(La.App. 3d Cir. 1983); see also, Saúl Litvinoff, 5 La. Civ. L.Treatise, Law of Obligations § 16.76 (2d ed. 2001). AlthoughViterbo, a United States Supreme Court case deciding Louisiana law applied the failure of an obligation from a failure of cause resulting only from force majeure, the Carpenter case, decided by the Louisiana Third Circuit in 1983, provides an interpretation whereby a failure of cause results in a failure of an obligation, regardless of the presence of force majeure. Therefore, in addition to being able to argue for specific performance for the failure of cause resulting from the developer's failure to adhere to the approved plans, it is also possible to argue that the entire obligation should fall due to the failure of cause based on the Carpenter case, thus resulting in a reversion of the zoning reclassification to its previous classification.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
Sincerely yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 By: ________________________
 RYAN M. SEIDEMANN
 Assistant Attorney General
 *Page 8 
 OPINION NO. 04-0047
 174 — Zoning
Honorable Theodore Lindsey LSA-Const. Art. VI, § 17
Mayor, City of Tallulah LSA-R.S. 33:4721 — 4729
204 North Cedar Street
Tallulah, Louisiana 71282 Local governmental subdivisions have the authority to adopt zoning
 regulations for the location of mobile homes; however, the retroactive
 application of zoning restrictions may be unconstitutional.

Dear Mayor Lindsey:
Your request for an Attorney General's opinion has been forwarded to me for research and reply. Specifically, you ask if your city council can pass a zoning ordinance which restricts the moving of mobile homes into Tallulah?
You also ask if this restriction on mobile homes can be applied retroactively?
Your first question is answered by Article VI, Section 17 of the Louisiana Constitution of 1974. This constitutional provision gives local governmental subdivisions the authority to adopt regulations for zoning and to create commissions and districts to implement those regulations. Also, LSA-R.S. 33:4721 — 4729 set forth the authority for regulating the use of buildings and land. More particularly, LSA-R.S. 33:4721 provides in pertinent part the following:
 For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate or restrict . . . the location and use of buildings, structures, and land for trade, industry, residence, or other purpose.
It is clear that Section 4721 grants the authority to regulate the location of mobile homes within the city limits of Tallulah.
Your second question asks if zoning restrictions can be applied retroactively. As stated above, the city council is given the authority to enact zoning restrictions prospectively. The issue of zoning ordinances which restrict property retroactively was addressed by the Louisiana Supreme Court in Redfearn v.Creppel, 455 S.2d 1356, (La. 1984). In this opinion Justice Dennis defines the term "conforming use" as: *Page 9 
 A use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated.
The opinion goes on to state that nonconforming uses of property are designed to avoid hardship, injustice, and the doubtful constitutionality of compelling the immediate removal of objectionable buildings and uses already in the area.
This is the situation with the zoning ordinance which prohibits trailers, mobile homes, modular homes and metal buildings from being allowed to remain in Tallulah. Rather than retroactively applying zoning ordinances, municipalities generally allow for nonconforming uses of property. Otherwise, the City of Tallulah may be effecting an unconstitutional "taking" of private property if residents are required to move mobile homes, trailers or modular homes. This may actually be a deprivation of property without due process and without just compensation which is prohibited by the United States Constitution, Amendment V, and by the Louisiana Constitution Article 1, Section 4. In Layne v.City of Mandeville, 633 So.2d 608 (La.App. 1st Cir. 1993), writ denied, 94-0268 (La. 3/25/94), 635 So.2d 234, the court stated that a governmental taking may occur in the form of zoning or rezoning. Such is the case in Tallulah. If people are required to move their homes many questions arise. Where will these people live? Who will pay for the moving? Where will the homes be moved? Are the property owners entitled to compensation for moving expenses and for substantial diminution of the remaining property?
Therefore, it is the opinion of this office that the retroactive application and enforcement of the zoning ordinance may be unconstitutional. According to the Layne (supra) court, whether or not this zoning restriction constitutes an unconstitutional taking is a factual determination. *Page 10 
We trust your questions have been sufficiently answered. However, if you should need anything further from this office, do not hesitate to call.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: __________________________ Frances J. Pitman Assistant Attorney General